Beulah W. Woodfin v. Commissioner.
Woodfin v. Commissioner
Docket No. 2922-70.
United States Tax Court
T.C. Memo 1972-49; 1972 Tax Ct. Memo LEXIS 204; 31 T.C.M. (CCH) 208; T.C.M. (RIA) 72049; February 24, 1972, Filed *204 During 1966 petitioner was a postdoctoral research associate working at the University of Michigan, Ann Arbor, Michigan, under a basic research grant in the aggregate amount of $20,200 awarded directly to the University by the National Science Foundation. This grant was awarded to support basic scientific research in a project conceived by the University with respect to experiments on enzymes then in progress in the University's biochemistry laboratory. Included in this grant was a "salary" of $15,000 for a 2-year period for a research associate to assist the principal investigator, a full professor at the University. The University hired petitioner as the research associate. She was subject to the direction and supervision of the principal investigator and made periodic reports to him. She was entitled to numerous fringe benefits accorded regular salaried employees of the University. On her 1966 income tax return, petitioner excluded from her gross income $3,600 of the $7,500 she received from the University in 1966. Held, no part of the stipend received from the University was excludable from petitioner's income in 1966 as a fellowship grant within the purview of sec. 117(a)(1)(B), I.R.C. *205 1954. Beulah M. Woodfin, pro se, 1331 Richmond, N.E., Albuquerque, N. Mex. Thomas M. Ingoldsby, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1966 in the amount of $745.44. The only issue for decision is whether the amount received by petitioner during 1966 for her work at the University of Michigan as a research associate under a National Science Foundation grant awarded to the University constituted a fellowship excludable from her gross income to extent allowable under section 117 of the 1954 Code. [1]
*207 Findings of Fact Some of the facts have been stipulated and are so found and incorporated herein by this reference. Beulah M. Woodfin, hereinafter sometimes called petitioner, is an individual and at the time of filing the petition herein resided in Albuqerque, New Mexico. Petitioner filed a Federal income tax return for the calendar year 1966, and an amended return for that year. In June 1963, petitioner received a doctorate (Ph. D.) in biological chemistry from the University of Illinois. Petitioner was not a candidate for any academic degree during the taxable year 1966. As an undergraduate, the petitioner held a summer job as a laboratory assistant. For approximately 2 1/2 years, the petitioner performed research in connection with the writing of her doctoral thesis. From September 1963 until September 15, 1965, the petitioner was a research associate at the University of Michigan, Ann Arbor, Michigan, hereinafter sometimes called the University. During this time, she received grants from the National Institute of Health and the Public Health Service financing her research. Petitioner treated the compensation received under these grants as fellowship stipends and *208 excluded the stipends from her gross income on the Federal income tax returns for the years 1963, 1964, and 1965. Petitioner has published approximately eight articles explaining the results of her research and there have been several references to the research she has performed in scientific journals. By September 15, 1965, petitioner had become a competent researcher in biological chemistry. In February 1965, a letter was submitted to the National Science Foundation, 209 hereinafter sometimes called NSF, [2] by Dr. Vincent Massey, professor of biological chemistry at the University of Michigan, and approved in writing (in this letter) by the Chairman of the Department of Biological Chemistry and an official authorized to sign for the University, requesting financial support for proposed research on "Studies on the Effects of Temperature on Enzyze Conformation." This proposal stated that work was currently in progress in the University's laboratory on several enzymes which show unusual temperature effects, and that the work was being carried out by Dr. Vincent Massey, the "principal investigator" and that Beulah M. Woodfin was to be his "research associate" on the project. *209 The NSF is an independent agency in the executive branch of the Government. Under Public Law 507 of the 81st Congress, the NSF is charged with the responsibility of supporting scientific research at educational institutions and nonprofit organizations. The NSF initiated the basic research grant program to fulfill this obligation. A basic research grant provides funds to enable educational institutions (such as the University) and nonprofit organizations to carry forward their investigation on research projects which they lack the funds to support themselves. The NSF also maintains a Postdoctoral Fellowship Program to enable persons with a Ph.D. to further their education and training. However, the NSF customarily awards its basic research grants to colleges, universities, and other nonprofit organizations. Rarely is a research grant awarded to an individual applicant. A basic research grant is awarded to an individual only when an institution, such as a college or university, is not available or is unable *210 to accept the grant. Such a situation does not exist in the instant case. In September 1965, the NSF informed the University of Michigan that it was awarded grant GB 4237 in the total amount of $20,200 to finance the proposed project in the University Laboratory. This grant was classified by the NSF as a "basic scientific grant." In its letter of award to the University, the NSF noted that a portion of the grant was allocated for the payment of a research associate's "salary" at the annual rate of $7,500 for a 2-year period. A research associate, according to the NSF, is a person who has received a Ph.D. and has held such degree for less than 5 years. Usually they are not members of the faculty. [3]
Under a basic research grant, funds are made available *211 for the hiring of a research associate because such person will be needed to assist in performing the research called for under the grant. The NSF does not make funds available for hiring a research associate for the purpose of enabling an individual to further his training or education in his individual capacity. The University of Michigan hired the petitioner as a research associate [4] at a salary of $7,500 for the year 1966. She worked on the grant involved herein as a research associate from September 15, 1965, through the year 1966 and until July 31, 1967. The NSF did not select the petitioner to be the research associate under its basic research grant GB 4237. It was the responsibility *212 of the University of Michigan, the recipient of this grant, to select the research associate. During 1966, the petitioner usually began work around 8 or 9 o'clock in the morning and ordinarily left work around 5 or 6 in the evening. Petitioner worked on the average from 45 to 50 hours a week as a research associate on the project in question. The amount of time the petitioner spent at work fluctuated somewhat and this was caused by variations in the work load. During 1966, petitioner's work was supervised by Dr. Massey, the principal 210 investigator on this project, and she was required to make periodic reports to him on the progress of her work. During this period, there were approximately five or six postdoctoral individuals, about three graduate students, and two or three technicians working in the laboratory under Dr. Massey. Petitioner worked mainly on studies of an oxidative enzyme involved in grant GB 4237. Dr. Massey's office was immediately adjacent to the laboratory and the postdoctorals, including petitioner, discussed their experiments with him. During the taxable year involved, petitioner (at her own request) instructed a section (15) of medical students twice *213 a week for one semester for the Department of Biochemistry at the University. During 1966, the petitioner was employed only as a research associate on this project and had no income other than the $7,500 she received from the University. The amount of funds made available by the NSF for the compensation of a research associate is determined by the wage scales and practices of the college, university, or nonprofit organization receiving the basic research grant. In basic research grant GB 4237, the amount of funds made available for the compensation of the petitioner as a research associate was the amount the NSF determined the University would pay the petitioner for the services she would render on the project. The University created a special account, No. 07651, to handle the funds ($20,200) they received under the NSF grant. Petitioner's 1966 salary of $7,500 was paid from the funds in this account. The University withheld income tax and FICA tax from the salary the petitioner received for her work as a research associate throughout the year 1966. As a research associate at the University during 1966, petitioner was automatically entitled to the following employee benefits: *214 health insurance, group life insurance, employees' retirement plan, disability plan, accrual of vacation leave, accrual of sick leave. Petitioner chose not to participate in any of these plans although she was eligible for these benefits which the University provided without contribution or approval by her. The University considered the wages paid to the petitioner during the year 1966 to be salary payments made for the services she rendered as a research associate on the grant involved herein. In January 1967, petitioner filed a Federal income tax return for 1966 and reported $3,600 of the amount ($7,500) received from the University during 1966 as a fellowship stipend under the NSF grant involved herein, and excluded this amount from gross income. In July 1969, she conceded that $1,200 of the $3,600 so excluded was taxable in 1966 (because she had excluded $300 per month from her gross income for more than 36 months permitted under section 117 (b)(2)(B) of the 1954 Code), and filed an amended return (Form 1040X) covering this adjustment, in which she reported additional tax owing in the amount of $62.64. Ultimate Findings of Fact The petitioner was an employee of the University *215 for the taxable year 1966 and was not the recipient of a NSF fellowship. The amounts petitioner received from the University during 1966 were compensation for services she rendered as a resarch associate in assisting the University to complete the research project the NSF had financed in grant GB 4237. Opinion The issue to be decided by this Court is whether the $3,600 excluded from gross income by petitioner comes within the purview of section 117 which permits the exclusion of certain amounts received as fellowship grants, [5] or whether the entire amounts 211 received by her during 1966 from the University of Michigan is includable in income as compensation under section 61(a)(1). Petitioner appeared pro se and represented herself in an impressive manner. Unfortunately, the law does not favor the petitioner's position and we must find against her. *216 Section 117(a) excludes from gross income any amount received "as a scholarship at an educational institution" or as "a fellowship grant." The statute does not define the terms "scholarship" and "fellowship grant," but the regulations provide that amounts representing "compensation for past, present, or future employment service," and amounts "paid * * * to * * * an individual to enable him to pursue studies or research primarily for the benefit of the grantor" are not excludable as scholarships or fellowship grants. Sec. 1.117-4(c)(1) and (2), Income Tax Regs.[6] These regulations have been held to conform to the statutory purpose and to comport with the ordinary understanding of scholarships and fellowships as relatively disinterested, no-strings educational grants with no requirement of any substantial quid pro quo from the recipients. Bingler v. Johnson, 394 U.S. 741 (1969). The regulations are thus designed, at least in part, to distinguish relatively disinterested payments made primarily for the purpose of furthering the education and training of the recipients from payments made primarily to reward or induce the recipient's performance of services for the benefit *217 of the grantor. See Elmer L. Reese, Jr., 45 T.C. 407, 411 (1966), affd. per curiam 373 F. 2d 742 (C.A. 4, 1967).
*218 In the instant case, the pivotal question to be resolved is whether the NSF grant involved was in fact a "fellowship," that is, whether the amount paid to petitioner by the University during the taxable year 1966 was for the primary purpose of aiding her in the pursuit of study or research at the University or whether the benefits of her research inured primarily to the University. The issue is essentially one of fact and each case must turn on its own particular facts and circumstances. See e.g., Ussery v. United States, 296 F. 2d 582, 586-587 (C.A. 5, 1961); Stewart v. United States, 363 F. 2d 355 (C.A. 6, 1966); Stephen L. Zolnay, 49 T.C. 389, 395 (1968); Commissioner v. Ide, 335 F. 2d 852, 855 (C.A. 3, 1964), affirming 40 T.C. 721, 724 (1963); Howard Littman, 42 T.C. 503 (1964); Woddail v. Commissioner, 321 F. 2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court; Alex L. Sweet, 40 T.C. 403 (1963); Chander P. Bhalla, 35 T.C. 13 (1960). Petitioner contends that the purpose of the basic research grant involved was solely to enable her to further her *219 independent research and education in biological chemistry, particularly in the area of enzymes which show unusual temperature effects; and that the payments in controversy in no way represent compensation to her for services rendered or to be rendered to the University in the past, present, or future. It is petitioner's position, in essence, that while the University was technically the grantor, it was no more than a conduit for the NSF fellowship funds to her in her individual capacity. Respondent, on the other hand, maintains that the NSF gave the University of Michigan funds necessary to perform certain biochemistry research and in turn the University was obliged to 212 perform the work outlined in the project; in carrying out this research, the University had to have someone with specialized knowledge of enzymes and hired petitioner to perform the research. Therefore, respondent avers the amounts the University paid petitioner were not a fellowship within the intendment of section 117, supra, but rather compensation for services she rendered. Sec. 61, supra. To secure the exclusion petitioner seeks under section 117(a) supra, she must establish that the payments she received *220 have the normal characteristics associated with the term "felloship." See Elmer L. Reese, Jr., supra, 413; Harvey P. Utech, 55 T.C. 434 (1970). Suffice it to say, the affirmative evidence shows that she did not receive a fellowship from the NSF within the ambit of the statute. Significantly, William E. Fee, Jr., in charge of the NSF's Grants and Contract Office during 1966, testified unequivocally that the grant in question was awarded to the University alone, and not to any individual, including petitioner.[7] We believe the record negates petitioner's argument that the amount in dispute was awarded to her to further her education without the rendering of any services by her as consideration therefor. Petitioner was under the direction and supervision of Dr. Vincent Massey, the principal investigator, to advance the project which he conceived; she was not free to engage in research activities of her own choosing. Moreover, the regularity of her working hours with variations contingent upon workloads denotes an employment situation. See *221 Clarence Peiss, 40 T.C. 78, 82 (1963). Manifestly, petitioner had developed skills in the study of enzymes before she was retained by the University and the grant was made to the latter by NSF on the basis of her qualifications to perform the research required by a specific research project. Apart from petitioner's testimony that it was her opinion that the payments she received were designed to aid her in furthering her education, there is no supporting evidence. Even if this is her understanding of why she was being paid and her principal objective in accepting this position, it is not determinative. Aloysius J. Proskey, 51 T.C. 918, 924-925 (1969). Petitioner, who has the burden of proof herein, was her only witness. She did not offer the testimony of either Dr. Vincent Massey or any others having to do with the procuring of the grant as to their primary purpose in so doing. See *222 Alex L. Sweet, supra.
Admittedly, petitioner may have derived substantial educational training and experience in her chosen profession from her work on the project involved. But the existence of such benefits is hardly inconsistent with our finding that the payments to her were made primarily for the benefit of the University. See Jerry S. Turem, 54 T.C. 1494, 1506-1507 (1970). Virtually all well organized projects of a scientific nature provide valuable training and improve the academic background of the participants. Nothing in section 117 requires that the stipend, paid as compensation for services rendered, be treated as a nontaxable fellowship grant merely because the recipient is increasing his knowledge and acumen in his trade, business, or profession. Robert W. Willie, 57 T.C. - (1971); see Aloysius J. Proskey, supra, 918, 925; ethel M. Bonn, 34 T.C. 64, 73 (1960); Woddail v. Commissioner, supra. In our view the payments involved were tied inextricably to petitioner's status as a full-time research associate (including teaching a class of medical students) at the University, and apparently these payments *223 were determined by what the University paid other research employees for performing similar services. Petitioner has not introduced any evidence pertaining to the scale of wages and practices of the University for compensating other research associates who worked in the laboratory during 1966 which would demonstrate that she had the status of a fellow rather than that of a regular employee. Moreover, the record shows that her financial needs were not considered by the NSF in determining the amount she was to be paid during the taxable year as is usually true of fellowship grants. Aloysius J. Proskey, supra, 924. Notably, the University denominated the payments in controversy as wages and salaries in its records. Nowhere in its records is there any mention that petitioner was a fellow or that the payments she received were anything other than salary. Moreover, the University withheld income 213 tax and FICA taxes from the amounts petitioner received; and she was allowed all of the benefits to which a University employee is normally entitled. Considering the total factual context involved herein, we are convinced that the research project in question was conducted *224 on behalf of the University and that it intended to derive the principal benefit from the undertaking. Although NSF's grant to the University may well have been noncompensatory in nature, the University's payments to petitioner were quite different. The University wished to participate in the NSF's program to initiate basic scientific programs in educational institutions in order to strengthen scientific research, and it was to this end that the University applied to the NSF for the funds paid in part to petitioner. The conclusion is inescapable that the payments were made primarily for the benefit of the grantor, which in this case was the University, and that the payments were received by petitioner as taxable compensation for services rendered under section 61, and not as a fellowship excludable under section 117, supra. Robert W. Willie, supra; MarjorieE. Haley, 54 T.C. 642, 647 (1970); Frederick Fisher, 56 T.C. 1201 (1971); Jacob T. Moll, 57 T.C. - (1972). Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The National Science Foundation is an organization described in section 501(c)(3) of the 1954 Code and as such is exempt from tax under section 501(a) of the Code.↩
3. According to William E. Fee, Jr., head of the NSF's Grants and Contracts Office during the year 1966, the grant in question was awarded to the University, a research associate generally is a professional assistant to the principal investigator designated in the grant letter, with "tight direction and supervision from the principal investigator, and would assist him in carrying out the objectives of the research project."↩
4. According to the Office of the Vice-president for Academic Affairs of the University, "The title Research Associate is granted to individuals who are considered postdoctorates (i.e., providing services for the achievement of further knowledge), and individuals who are considered employees (i.e., earning a livelihood). Research Associates in either of these categories are entitled to Health Insurance, Group Life Insurance, Employee Retirement Plan, Disability Plan, Vacation, Sick Leave."↩
5. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - * * * (B) as a fellowship grant, including the value of contributed services and accommodations; Income Tax Regs. Sec. 1.117-3 Definitions. * * * (c) Fellowship grant. A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. * * * (d) Contributed services and accommodations. The term "contributed services and accommodations" means such services and accommodations as room, board, laundry service, and similar services or accommodations which are received by an individual as a part of a scholarship or fellowship grant.↩
6. Sec. 1.117-4 Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of sec. 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for service which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destory the essential character of such amount as a scholarship or fellowship grant.
7. In this connection, William E. Fee, Jr., testified that petitioner was not awarded a grant for the year 1966 under the NSF's Postdoctoral Fellowship Program or any other program.↩