ABELARDO V. PASEIRO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paseiro v. Commissioner
Docket No. 10417-75.
United States Tax Court
T.C. Memo 1977-359; 1977 Tax Ct. Memo LEXIS 83; 36 T.C.M. (CCH) 1432; T.C.M. (RIA) 770359; October 6, 1977, Filed Abelardo V. Paseiro, pro se. Joan Ronder Domike, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency of $1,726.23 in petitioner's Federal income tax return for the taxable *84 year 1973. The sole issue for determination is whether petitioner is entitled to exclude from his gross income, upon the authority of section 117(a)(1), [1] certain monies he received as a resident at Albert Einstein College of Medicine, Bronx Municipal Hospital Center. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Abelardo V. Paseiro resided in New York, New York, at the time the petition was filed. Petitioner's Federal income tax return for the 1973 taxable year was filed with the appropriate office of the Internal Revenue Service. Petitioner received his medical degree from the University of Buenos Aires in 1961. During January 1 through January 31, 1973, petitioner was serving in the second year of his residency in rehabilitation medicine at Albert Einstein College of Medicine, Bronx Municipal Hospital Center (hereinafter referred to as AECOM and BMHC). For the remainder of 1973, petitioner served in his senior (third) year of residency *85 at AECOM. In 1973, petitioner was not a candidate for an academic degree at an educational institution. The residency he served was required for professional certification by the American Board of Physical Medicine and Rehabilitation. AECOM is the College of Medicine of Yeshiva University, New York, New York. AECOM is affiliated with the BMHC as the center's chief facility for professional care. AECOM is an organization described in section 501(c)(3) as tax exempt under section 501(a). Petitioner signed agreements to serve as a resident in rehabilitation medicine for AECOM. These agreements required him to remain the full length of service including all of 1973, unless he was relieved for cause. He was limited to performing his medical skills at BMHC except in emergencies when detailed by the Executive Director of BMHC. Any duty assigned to petitioner by the Executive Director of BMHC was to be performed. The rules and regulations for house staff of the hospital and the rules and regulations established by the Executive Director and the Medical Board governed his conduct. The agreements provided petitioner would receive any honorarium (stipend) allocated in the appropriate *86 budget in addition to meals, uniforms and laundry service. As a senior resident, he was entitled to a maximum of a month's vacation. The residency program in rehabilitation medicine combines patient care and education. Residents are responsible, under the supervision of the AECOM faculty, for the care of patients. For example, residents run one of the AECOM hospitals completely with the AECOM faculty there in roles limited to consulting, supervising and teaching. The AECOM Department of Rehabilitation Medicine (hereinafter referred to as the Department) schedules weekly educational sessions for the residents. Residents attend these sessions when not involved in scheduled clinics, rounds or consultations. In addition, residents attend three one-week courses in Orthotics, Prosthetics and Electromyography during the three years of residency. Residents also assist in carrying out certain administrative responsibilities such as reporting accidents, preparing birth and death certificates and maintaining patient case histories. Petitioner on Monday mornings normally went to the outpatient clinic. At the outpatient clinic petitioner saw a number of patients. Each patient was interviewed *87 and examined. Supervising physicians usually assisted the petitioner in solving the patients' problems. On Monday afternoons, petitioner saw patients at the electrodiagnostic clinic. A physician was also present to assist the residents. Often on Tuesday mornings, petitioner would see patients and evaluate the patients' problems. Petitioner then reviewed the cases with an attending physician. No two senior residents would see the same patient. Also on Tuesday petitioner and the other senior residents would congregate to listen to a presentation of an interesting case by one of the senior residents. Petitioner on Wednesday mornings was assigned either to electrodiagnosis or to seeing patients and consulting with the attending physician concerning the patient. On alternate Wednesday afternoons, petitioner worked at the amputee orthotic clinic run by a staff doctor. Many times a training session involving a discussion of difficult, unusual or interesting cases in the inpatient service was presented by one of the doctors for the benefit of the residents on Thursday mornings. Thursday afternoons might be spent in consultation with an attending physician or in the electrodiagnostic *88 clinic. Usually on Friday petitioner saw patients at one of four hospitals and consulted with an attending physician. On Saturday and Sunday petitioner normally did not work. At various days during his senior residency, petitioner was on second call. On these days petitioner was to be at home to handle telephone calls from junior residents needing his assistance. Petitioner, like other senior residents, devoted at least half of his time to services charged in some part to the patient. Absent the residents and the services performed by them, AECOM would have had to hire additional physicians. For the budget period July 1, 1972 through June 30, 1973, the Department received a Teaching Grant and Traineship in Rehabilitation Medicine from the Social and Rehabilitation Service of the U.S. Department of Health, Education and Welfare (HEW). The sum of $53,500.00 of the grant of $118,073.00 was allocated for residency stipends. For the budget period July 1, 1973 through June 30, 1974, the Department received another grant for Teaching and Training in Rehabilitation Medicine from HEW. Out of the $70,645.00 grant, $34,500.00 was allocated for residency stipends. During 1973, twelve *89 residents were training in the Department. Stipends for those residents not paid from grant and affiliation funds were paid from other AECOM sources including the City Department of Hospitals. If the Department had not been awarded the HEW grant, fewer residents would have been in the residency program, but the residency program would have been unchanged. Petitioner's training activities and assignments on the Department's weekly schedules were determined the same way as the training activities and assignments for residents not receiving HEW stipends. Petitioner's stipend for 1973 was determined by the going rate for the postgraduate year of the residency and not determined by need. He received single payments from AECOM. The stipend was paid out of affiliation and training grant funds of AECOM. The affiliation portion of his stipend came from BMHC. The grant portion of his stipend came from the grant awarded by HEW to the Department. Yeshiva University paid petitioner $15,616.83 as wages and other compensation in 1973. Yeshiva University withheld Federal, state and city income and FICA taxes from his checks. He excluded $6,750.00 from his 1973 Federal income tax return *90 as "Federal training grant funds" from HEW. Petitioner recognizes that this exclusion was incorrect to the extent that the $300.00 monthly limitation or $3,600.00 annual limitation was not applied. OPINION Petitioner in 1973 was a second-year resident for the first month and a third-year resident for the remainder of the year at AECOM. His residency in rehabilitation medicine was required for professional certification by the American Board of Physical Medicine and Rehabilitation. As a resident, petitioner was assigned to rounds, clinics and consultations and was on second call at other times. When not involved in these scheduled duties, he attended educational sessions. Yeshiva University paid petitioner $15,616.83 during the year. Of this amount $6,750.00 was attributable to the training grant from HEW. Section 117(a)(1) excludes from gross income, subject to limitations inapplicable here, any amount received "as a fellowship grant." Section 1.117-3(c), Income Tax Regs., provides: (c) Fellowship grant. A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. * * * Section *91 1.117-4(c)(1), Income Tax Regs., by inverse implication further defines a fellowship grant by excluding certain payments or allowances from the preferred tax treatment of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. In Bingler v. Johnson,394 U.S. 741, 751 (1969), the Supreme Court said that the definition of scholarships and fellowships contained in section 1.117-4(c), Income Tax Regs., comports with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The primary purpose of the grantor in making the payments to petitioner determines whether they represent a fellowship to enable petitioner to *92 further his education or compensation for his services. Bailey v. Commissioner,60 T.C. 447 (1973). Before determining the primary purpose of the grantor in making the payments, the grantor of that portion of petitioner's stipend attributable to the HEW grant must be identified. The HEW grant was awarded directly to AECOM of Yeshiva University. Yeshiva University selected which residents were to receive the HEW funds and paid them. The activities and training of the residents were supervised by Yeshiva University. No relationship existed between the residents and HEW. Yeshiva University, therefore, was the grantor of that portion of petitioner's stipend attributable to the HEW grant. Fisher v. Commissioner,56 T.C. 1201 (1971). Petitioner provided extensive and valuable services to AECOM. Petitioner assisted in carrying out certain administrative responsibilities such as reporting accidents, preparing birth and death certificates and maintaining patient care histories. Petitioner was assigned to rounds, clinics, consultations and at other times was on second call. Petitioner attended the educational exercises scheduled by the Department *93 only when not involved in scheduled clinics, rounds or consultations. Petitioner, like other senior residents, devoted at least half of his time to patient services charged in some part to the patient. That one of the AECOM hospitals is run by residents completely with the AECOM faculty there in roles limited to consulting, supervising and teaching underscores the value of the residents' services to AECOM. Absent the residents and the services performed by them, AECOM would have had to hire additional physicians. Further evidence of an employer-employee relationship between AECOM and petitioner is the control exercised by AECOM over the practice of medicine by petitioner. Petitioner agreed to serve as a resident in rehabilitation medicine for AECOM for all of 1973, unless he was removed for cause. He was limited to performing his medical skills in BMHC except in emergencies when detailed by the Executive Director of BMHC. Any duty assigned to petitioner by the Executive Director of BMHC was to be performed. The rules and regulations for house staff of the hospital and the rules and regulations established by the Executive Director and the Medical Board governed his conduct. *94 In return for petitioner's services as a resident, petitioner received a stipend. His stipend was based upon the going rate for the postgraduate year of the residency, not based upon need. During 1973, Yeshiva University paid petitioner $15,616.83 as wages and other compensation. Yeshiva University withheld Federal, state and city income and FICA taxes from his checks. During his senior residency petitioner was entitled to a maximum of one month's vacation. Other benefits received by him included meals, uniforms, and laundry service. The portion of petitioner's stipend attributable to the HEW grant is fully taxable income. Contrary to the contention of petitioner, a ruling by the National Labor Relations Board that hospital residents are students rather than employees under the National Labor Relations Act does not determine the proper classification of petitioner under section 117. Loo v. Commissioner,22 T.C. 220 (1954). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩