**MARQUETTE UNIVERSITY, a non-stock, nonprofit corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 84–C–69.**

United States District Court, E.D. Wisconsin.

Oct. 29, 1985.

Opinion on Tax Liability for Teaching Awards Sept. 18, 1986.

William J. Mulligan, Mulcahy & Wherry, S.C., Milwaukee, Wis., for plaintiff.

Thomas Sykes, Dept. of Justice, Washington, D.C., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiff Marquette University brought this action seeking a refund of federal withholding taxes it paid for the years 1973 through 1978. The defendant United States of America has moved for partial summary judgment. Because "there is no genuine issue as to any material fact" and the United States "is entitled to judgment as a matter of law," Fed.R.Civ.P. 56, the motion is granted.

During the period in question Marquette provided certain of its employees with the option of electing from a variety of fringe benefits. The three at issue here included parking spaces, recreation center memberships and tuition payments by Marquette for certain employees' children at Milwaukee-area high schools.

The benefits were available to those Marquette employees who were paid on a monthly basis: full-time faculty and administrators. Marquette has indicated that its intent was to allow those employees to negotiate their salary and fringe benefits on an individual basis. Those who elected to receive a benefit had their annual salary reduced by an amount equal to the annual cost of the benefit package they had chosen. Marquette kept payroll records reflecting the identities of those receiving benefits and the amounts by which their salaries had been reduced. Employees were free to opt out of any benefit package they had chosen and their salaries were then accordingly raised.

Faculty members desiring to take advantage of the tuition-related benefits would inform Marquette. The University would then contact the high school, determine the tuition and obtain the agreement of the high school to remit the tuition to the employee in exchange for payment of that amount by the University. Marquette then paid the high school tuition as it became due and made a corresponding reduction of the employee's salary.

Similarly, the plaintiff would deduct the cost of parking and recreation center memberships before determining the salary of employees who chose to receive the benefits.

Marquette did not withhold federal income taxes on amounts by which the salaries of participating employees were reduced. The University paid the taxes after they were assessed by the Internal Revenue Service and then filed this action for a refund.

### I. *Analysis*

Section 61(a) of the Internal Revenue Code defines gross income generally as "all income from whatever source * * * including * * * compensation for services * * *." It includes "income realized in any form, whether in property, or services." Treas. Reg. § 1.61–1(a) (1954). "[T]he incidence of taxation depends upon the substance of a transaction * * *." *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). Given these broad inclusions, the plaintiff will need to find a specific statutory section which allows it to exclude the amounts in question from "gross income."

### A. Tuition-Related Payments

The plaintiff makes a variety of attacks on the government's assessment of withholding taxes which arose from the tuition-related payments. Marquette University places primary reliance upon Treasury Regulation § 1.117–3(a) which provides in relevant part:

> If an educational institution maintains *or* participates in a plan whereby the tuition of a child of a faculty member of such institution is *remitted by any other participating educational* institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship. (emphasis added)

Scholarships are specifically excluded from income under 26 U.S.C. § 117.

Marquette is an educational institution but the parties are in disagreement whether it "maintains or participates in a plan whereby the tuition ... is remitted by any

other participating educational institution." Treas.Reg. § 1.117–3(a). Marquette argues that it "maintains," as opposed to "participates in," a plan, but admits that "the defendant may be correct in arguing that the work [sic] 'participates' implies a reciprocal arrangement...." (Plaintiff's Brief at p. 19) The admission is fatal to plaintiff's argument.

The regulation itself states that even an institution that "maintains" a plan is a "participating institution;" the regulation refers to "any other participating institution." The legislative history to the Tax Reform Act of 1984 describes the operation of § 1.117–3(a) as a "tuition-exchange plan," H.R.Report. 98th Cong.2d Sess., at 1171.

■ Because the Court must interpret this exclusion narrowly, *Bingler v. Johnson*, 394 U.S. 741, 752, 89 S.Ct. 1439, 1445–46, 22 L.Ed.2d 695 (1964), and because the arrangement in question would clearly be taxable but for the exclusion [1], the Court finds that Marquette's tuition payment plan is not a "scholarship" for the purposes of Treas.Reg. § 1.117–3(a).

Marquette next contends that even if the payments were taxable to the employees, there was no requirement that the University withhold taxes. Specifically it relies upon *Central Illinois Public Service Co. v. United States*, 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978), for the proposition that an employer's fringe benefits to an employee are not necessarily subject to federal income tax withholding. In that case the Supreme Court held that a company's reimbursement of employee's lunch expenses incurred on non-overnight company travel was neither wages nor subject to the withholding obligation.

In so deciding, the Supreme Court noted that congressional "committee reports of the time stated consistently that 'wages' meant remuneration *'if* paid for services performed by an employee for his employer.'" *Id.* at 27, 98 S.Ct. at 920 (emphasis supplied by the Court). The Court pointed out that Congress " 'in the interest of simplicity and ease of administration,' confined the obligation to withhold to 'salaries, wages, and other forms of compensation for personal services.'" *Id.* (citations omitted).

Marquette is in a different position from the plaintiffs in *Central Illinois*. Marquette's tuition payments were "paid for services performed by an employee for an employer." *Id.* at 23, 27, 98 S.Ct. at 918, 920. No interest in simplicity or ease of administration is contravened by treating the amounts as wages; Marquette kept payroll-related records of the amounts. It could figure the withholding based upon the wage before the deduction for tuition was made.

Nor was Marquette's obligation to withhold these amounts so unreasonably imprecise or speculative that it would be "some-

---

1. In *Bingler v. Johnson*, 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969), the Supreme Court suggested that any payment sought to be excluded under § 117 should "comport ... with the ordinary understanding of scholarships and fellowships as relatively disinterested, no strings educational grants, with no requirement of any substantial quid pro quo from the recipients." The court emphasized that payments that are compensation for services are not scholarships. *Id.* at 752, 89 S.Ct. at 1445–46.

This arrangement essentially allows a class of Marquette employees to assign their wages for the benefit of third parties, their children. The employees were far from "disinterested" in the education of their dependents.

Treas.Reg. § 1.117–3(a) is also illuminating in its definition of "scholarship."

However, the term does not include any amount provided by an individual to aid a relative, friend or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

Because Marquette's plan is without the requirements of the latter sentence, the payments are subject to taxation because the employees are motivated by "family considerations."

what retroactive in character and almost punitive." *Id.* at 32, fn. 12, 98 S.Ct. at 923, fn. 12. Treas.Reg. § 31.3401(a)–1(b)(5), among other regulations [2] informing plaintiff of its obligation, stated:

> Any amount deducted by an employer from the remuneration of an employee is considered to be a part of the employee's remuneration and is considered to be paid to the employee as remuneration at the time that the deduction is made. * *

■ In sum, the tuition-related payments were wages within the meaning of the Internal Revenue Code and Treasury Regulations, and as such, were subject to employer income tax withholding.

### B. Parking and Recreation Center Memberships

■ Plaintiff next contends that the amount by which employees' compensation was reduced to cover the cost of parking and recreation center memberships was not income. It relies upon the Tax Reform Act of 1984, which provides no support as it was passed seven years after the last year at issue, and Treas.Reg. 31.3401(a)–1(b)(10) which provides:

> (10) *Facilities or privileges.*—Ordinarily, facilities or privileges (such as entertainment, medical services, or so-called "courtesy" discounts on purchases), furnished or offered by an employer to his employees generally are not considered as wages subject to withholding if such facilities or privileges are of relatively small value and are offered or furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees.

Neither the parking or recreation center arrangements meet the criteria. They were not available to employees generally or of relatively small value; or were they furnished by the employer merely as a means of promoting the health, good will, contentment, or efficiency of his employees.

Taking these considerations in reverse order, first, the benefits are something the employee buys from his employer. The employee decided whether to take the money or the benefit. It was not "furnished," but sold by the employer.

Second, the consideration received was not "of relatively small value" as that phrase is used in the Regulations. The fact that Marquette considered the costs significant enough to deduct them from the employees' wages belies its claims that the amounts are *de minimus.* Congress, in enacting these statutes, has revealed an intent to free employers from an obligation to withhold on benefits that are so small that the employers' administrative burden would outweigh the benefits reaped by the government. Here, however, Marquette already keeps records of the deductions for the benefits and deducts the correct amount of withholding taxes from those who do not opt in to the program.

Finally, the benefits were not available to employees "generally," but only to those monthly employees who agreed to salary reductions to pay for the benefits. Those employees who were paid biweekly, or monthly employees who did not choose the benefits, continued to have their full gross income subject to withholding taxes.

To allow this artificial method of "reducing" gross income would simply increase the tax burden of other employees without such an opportunity. Absent specific Congressional approval of such a scheme, this Court cannot approve it.

As there are no genuine issues of material fact and the law agrees with the defendant United States of America's contentions,

---

**2.** This regulation put Marquette on notice that the payments were wages and subject to withholding. Other regulations also pointed plaintiff in that direction. Section 31.3401(a)–1(a)(1) of the Regulations provided that "the term 'wages' means all remuneration for services performed by an employee for his employer unless specifically excepted * * *"; Section 31.-3401(a)–1(a)(2) provided that "[t]he name by which the remuneration * * * is designated is immaterial"; and Section 31.3401(a)–1(a)(3) provided that "[t]he basis upon which the remuneration is paid is immaterial * * *."

IT IS HEREBY ORDERED that the defendant's motion for partial summary judgment as to all three counts is granted.

## OPINION ON TAX LIABILITY FOR TEACHING AWARDS

Plaintiff Marquette University brought this action seeking to recover employment taxes alleged to have been wrongfully withheld by the government, and interest that was alleged to be owing on an overpayment of FICA taxes made by the plaintiff. The government agreed to pay Marquette interest on the overpayment of FICA taxes and this court granted the government's motion for summary judgment on three of the five counts in Marquette's complaint regarding employment taxes. The two remaining claims dealing with the tax liability of Marquette for certain teaching awards and a summer fellowship program were the subject of a two day trial to the court. The court has jurisdiction over this tax refund suit pursuant to 28 U.S.C. § 1346.

### A. Findings of Fact

Plaintiff Marquette University is one of the largest Catholic Universities in the United States. It is a non-stock, not-for-profit corporation organized under the laws of the State of Wisconsin, and is qualified as a tax-exempt, educational institution under 26 U.S.C. § 501(C)(3). From 1973 to 1978 roughly ten thousand students attended the university full time and there were between 500 and 600 full-time faculty members.

### Pere Marquette Awards

Marquette has picked two distinguished faculty members each year since 1959 to receive the Pere Marquette Award for Teaching Excellence. Recipients are nominated by students, faculty, department chairmen and deans. Faculty members may not name themselves and the selection process is democratic and confidential. The selection committee, composed of former winners, considers the entire career of the faculty member at Marquette in choosing the recipients.

The award was established to recognize and encourage teaching excellence and it is coveted by faculty members. It is awarded each year at a banquet and each recipient receives a certificate and a $1,000 check from the Marquette Comptroller's office. Private contributions normally provide the funds for the award but Marquette's general funds cover the check if no outside support is found.

That money was not made as part of, or in lieu of, the regular salary paid to the faculty member, though the recipients had been paid for the work they had done that merited the award. Marquette, apparently relying upon it's interpretation of 26 U.S.C. § 74(b) which exempts certain awards made in recognition of educational achievement, did not withhold federal income tax on the amounts awarded. After an audit by the Internal Revenue Service, Marquette paid the tax for the years from 1973 through 1975, and instituted this suit.

### Summer Faculty Fellowships

Each year from 1973 through 1978, Marquette's Committee on Research selected approximately twenty faculty members to receive summer fellowship awards. These awards were designed to further the education and training of the recipients, encourage outside research, familiarize the faculty with the process of writing grant applications, and provide support for those faculty members who lacked the time to research and write during the rest of the year. During the years in question Marquette did not have any full-time research faculty.

The selection committee was composed of various faculty members. They reviewed applicants' research proposals and made selections based upon the past work of the applicant and the merit of the research proposal submitted. Only Marquette faculty who were not degree candidates or on the summer school faculty were eligible for the grants.

Applicants were required to attempt to obtain outside funding before applying for university support. The applications from

1973 to 1976 also stated that only faculty who were returning for the fall semester were eligible for the grants. During the relevant time period, only four recipients who received the award did not return. Marquette made no attempt to recover the amounts of their awards or to force the recipients to return for the fall to teach. After the Internal Revenue Service began an audit of Marquette, the school removed the language about returning from its announcement and inserted a phrase stating that the fellowships were not intended as compensation by the university.

The size of the payment was tied to the faculty rank of the recipient, not the research proposed. The grants were not provided in lieu of the recipient's salary or compensation package, and were not something an employee could bargain for. No additional fringe benefits were awarded with the fellowships apart from the employees' normal benefit package.

Recipients were prohibited from performing any other duties during the period of the grant but once a grant was awarded, neither the committee nor Marquette had any supervision or control over the timing or methods used in carrying out the research. Marquette had no policy with regard to any patents, inventions or other products that may have resulted from the research. The recipients were expected, but not required, to publish the results of the research. They also had to submit an informal report at the end of the summer in which they summarized their research.

Marquette, apparently operating under the belief that 26 U.S.C. § 117 provided an exemption, failed to withhold taxes from the fellowships from 1973 through 1975. After an audit by the Internal Revenue Service and pursuant to its interpretation of the statute, Marquette did withhold on amounts in excess of $300 in 1976 through 1978. Marquette paid the taxes that were assessed after the audit and commenced this action for a refund.

### Conclusions of Law

#### A. Pere Marquette

The $1,000 that accompanies each Pere Marquette award is to be included within "gross income" unless it is specifically excluded by some other provision in the code. 26 U.S.C. § 61(a). The plaintiff contends that the Pere Marquette awards fall under the exclusion provided by 26 U.S.C. § 74. The government argues that that exclusion can never be available when an employer makes the award to an employee.

Section 74 excludes awards made primarily in recognition of educational achievement if the recipient was chosen without any action on his part to enter the contest or proceeding and he is not required to perform any substantial future service as a condition for receiving the award. Treasury Regulation § 1.74–1 explains that § 74 does not exclude from income any prize or award given by an employer to an employee in recognition of some achievement in connection with his employment.

Treasury Regulations are entitled to great weight and the court will not set one aside unless it is unreasonable or clearly inconsistent with the statute. The legislative history reveals that Congress intended to tax awards from employer to employee for work related achievements such as sales records and outstanding production. The government argues, and the regulation supports the position, that all awards from employer to employee are taxable.

Marquette relies upon a recent 9th Circuit case wherein that court rejected the regulation and the "bright-line" rule proposed by the government. In *Jones v. Commissioner*, 743 F.2d 1429 (9th Cir. 1984), the court held that an internationally recognized scientist who had worked for the government for thirty years was not required to report as income a one-time life achievement award given to him by his employer, NASA, for his numerous contributions to NASA and the scientific understanding of aeronautics in general.

The $1,000 that accompanies the Pere Marquette award is taxable income under both the statute and the regulation. The award is controlled and partially funded by Marquette, the employer, and is giv-

en only to Marquette faculty, the employees, on the basis of how well they performed the duties they were hired to perform. Apart from the regulation, the teachers fail to meet the requirement that they be selected without any action on their part to enter the contest or proceeding. *Jones* did not address the question because the parties had stipulated that that requirement had been met.

While it is true that faculty members may not nominate themselves for their employer's award, that is the effect of them taking a faculty position at Marquette. The award is made primarily in recognition of teaching achievement at a specific school, not for general educational achievement. The annual award to two professors is designed to encourage excellence in Marquette's business, and both the employer and the winning employee derive direct benefits from the program. Apart from the fact that Marquette is an educational institution, it is difficult to distinguish between the money Marquette provides its best teachers and a bonus directed to the top two salesmen at an auto dealership.

█ Under both the statute and the regulations the amount of the annual award must be taxed as income to the recipients. In addition, the money awarded also constituted wages and, as a result, imposed on Marquette an obligation to withhold taxes. Given the presumption that monetary transfers from employer to employee are income, and the language of the statute and the regulation, Marquette may not claim after the fact that it was not responsible for withholding taxes on the income at issue. Little or no additional administrative burden would have been imposed by requiring withholding here.

The money accompanying the Pere Marquette award was non-excludable income that constituted wages which imposed a withholding obligation upon the university.

### Summer Fellowship Awards

Marquette argues that the money it pays its faculty as part of its summer fellowship program is excludable as a fellowship under 26 U.S.C. § 117(a). The parties agree that *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), controls. In *Bingler* the Supreme Court defined fellowships as "relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." 394 U.S. at 747, 89 S.Ct. at 1443.

█ Marquette's summer fellowship program resulted in taxable income to the faculty members whose projects were chosen. The payments were not the "relatively disinterested" grants that the statutory exception requires. Neither did the grants come without "strings" or a required *quid pro quo*.

First, and foremost, the employer only gave the grants to its faculty employees. Marquette has an obvious interest in its faculty members learning how to obtain funding and conducting and publishing research. Marquette had no full-time research faculty at the time. Given the importance of research and publication in academia, the school had a substantial interest in keeping its employees happy and providing them with the opportunity to pursue their academic interests and keep abreast of developments in their areas of expertise. Marquette was not "disinterested" in the recipients of the fellowships, or the work they would produce.

The fellowships also came with strings. Almost all of the recipients returned to their teaching duties in the fall. Although Marquette removed that written requirement from its brochure after an IRS audit, the program was run primarily for the benefit of continuing faculty. The fact that Marquette chose not to pursue the few employees who left after receiving the awards is not significant.

In addition, Marquette did receive a substantial *quid pro quo* from the recipients in that the University directly benefited from the research its faculty did. The freedom the university gave its faculty in carrying out their research came after a specific topic had been approved, and the support the employer provided resulted in one of

the main things a university produces, research. The fact that the amounts of the awards were directly related to the seniority of the recipient reveals its compensatory nature.

 Finally, Marquette had a duty to withhold taxes from the amounts of the fellowships because the income constituted "wages." Marquette was clearly compensating its employees for carrying out the normal functions that university faculty perform. Its obligation to withhold taxes from such income was not so imprecise or speculative as to remove that obligation.

## Conclusion

The payments at issue in this suit were income and wages under the Internal Revenue Code. Marquette's attempt to recover the taxes paid must fail.

IT IS THEREFORE ORDERED that judgment be entered for the government and that this action be dismissed.