TI LI LOO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45288. Filed April 30, 1954.

*Ralph E. Garner, Esq.*, for the petitioner.
*John C. Calhoun, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The petitioner contends that the sum of $4,500 which he received in 1950 under a research fellowship is exempt from Federal income tax under the provisions of section 22 (b) (3) of the Internal Revenue Code. He contends, in general, that the fellowship was for the purpose of furthering his training and education. He relies strongly upon the point that he was classified as a "student" when he entered the United States in 1947, and that his status under the immigration statutes and regulations continued to be that of a student until some time in 1951 when he exercised the election to change his immigration status to that of a displaced person.

The petitioner argues that the stipend he received under the fellowship in question was only to defray his living expenses; that it was not "commensurate" with his training and experience; and that taxation of such receipts would tend to discourage research. He contends, further (but without evidence in support of the contention), that he understood the fellowship award to be in the nature of a gift, and that the University of Maryland intended it to be a gift.

The respondent contends that the facts of this proceeding make it indistinguishable from *Ephraim Banks*, 17 T. C. 1386. We understand that he relies also upon a ruling of the Treasury Department, I. T. 4056, 1951–2 C. B. 8.

Although the petitioner fails to cite any authority in support of his contentions, his arguments suggest the rationale of *McDermott* v. *Commissioner*, 150 F. 2d 585, reversing *Malcolm McDermott*, 3 T. C. 929.

Almost all of the facts in this proceeding were stipulated by the parties. Nothing in the record before us supports the petitioner's contention that a gift of the money which he received in 1950 was intended by the grantor. There is no evidence that the fellowship in question was a "prize." On the contrary, the evidence clearly shows that petitioner did not receive the fellowship in any competitive contest. This case is distinguishable on its facts from *McDermott* v. *Commissioner*, *supra*.

Before the petitioner received the research fellowship from the University of Maryland he had completed his dissertation for his doctor's degree and he had received that degree from Oxford. Part of his work at Oxford for his doctor's degree in chemistry had been research in the use of drugs known as pentaquine in combating and curing malaria. Petitioner, by his own admission, was a "very good organic chemist." He had developed skill in research in antimalarial drugs such as pentaquine before he received the research fellowship from the University of Maryland, and it is evident that the fellowship was awarded to him on the basis of his qualifications to do the research work required by a specific project. The conclusion is ines-

capable, upon the evidence before us, that the petitioner gave his skill, training, and experience in consideration for the stipend he received from the University of Maryland which received funds for the specific research project upon which petitioner worked from the National Institutes of Health of the United States Public Health Service. It cannot be said that the monthly payments which aggregated $4,500 in 1950 were received by petitioner for nothing. The University of Maryland and the National Institutes of Health derived something tangible from petitioner's research, albeit in a negative way, for his research showed that compounds of certain drugs were not more effective than the parent drug, pentaquine, in combating or curing malaria. Furthermore, if his research had produced any patentable discovery it would have become the property of the United States through the United States Public Health Service. Under these circumstances the necessary elements of a gift as contemplated by section 22 (b) (3) of the Code are not present. *United States* v. *Robertson*, 190 F. 2d 680, 683.

Also, the evidence negates the proposition that the research fellowship in question was awarded to petitioner for furthering his education without the rendering of any services by petitioner as consideration therefor. A research project was planned by Dr. Nathan L. Drake, of the University of Maryland, who directed petitioner's work in the execution of the project. The petitioner was required to make written reports to Dr. Drake upon the progress and results of his research; he made such reports and they became part of the university's records. It is entirely clear that petitioner's services in the execution of a specific research project were expected by the University of Maryland in return for the monthly payments which the fellowship carried.

We agree with the petitioner that the fellowship to which he was appointed in 1947 was for the furtherance of research, but this fact alone does not serve to make the fellowship stipend a gift within the ambit of section 22 (b) (3). The fellowship, as far the record before us shows, was not granted for the training or education of petitioner. Rather, the petitioner applied his skill and training to advance a specific research project. This conclusion is reached upon the entire record before us.

It is immaterial in deciding the question before us, under all of the circumstances, that petitioner's immigration status was classified by the United States Immigration and Naturalization Service as student during the period from 1947 until some time in 1951 when the petitioner exercised the election to be classified as a displaced person. The petitioner must establish that the payments under the research fellowship come within section 22 (b) (3) of the Internal Revenue Code if he is to succeed in this proceeding. The mere classification

of student in his immigration permit does not in itself establish that the research fellowship was awarded as a gift to petitioner for his training and education.

Petitioner appears to assert that his motive in applying for and accepting the research fellowship was not pecuniary. He appears to claim that his acceptance of monthly payments was solely to enable him to meet his living expenses. If petitioner's motives were solely these motives, they are not controlling. But we do not believe that petitioner applied for and accepted the award without the realization that he would give his professional services in a research project planned by others in exchange for money, and without the thought of economic gain. The annual compensation was more than nominal; it was more than a subsistence allowance. The fellowship was renewed beyond the original term of 1 year, and the monthly compensation was increased. Upon the termination of the fellowship in 1951, petitioner applied for and received a position at Christ Hospital in Cincinnati where similar research work was being carried on. The character of the compensation which petitioner received is for tax purposes fixed by the fact that for more than three and one-half years he gave his services as an organic chemist and applied his training and skill in research which was sought by and was for the benefit of others, rather than by his alleged nonpecuniary motive. *Herbert Stein*, 14 T. C. 494.

The facts in this proceeding so closely resemble the facts in *Ephraim Banks, supra*, that we must arrive at the same conclusion as was reached there. It is held that the monthly payments under the fellowship were made for valuable consideration moving to the grantor; they did not constitute gifts from the viewpoint of either the grantor or the recipient, the petitioner. The respondent's determination is sustained.

*Decision will be entered for the respondent.*