GEORGE WINCHESTER STONE, JR., AND HELLEN DEAN STONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42788. Filed November 17, 1954.

*Roswell Magill, Esq.*, and *Albert Rosenblum, Esq.*, for the petitioners.

*George E. Grimball, Jr., Esq.*, for the respondent.

258

### OPINION.

TIETJENS, *Judge:* The issue is whether the amount received by the petitioner from the John Simon Guggenheim Foundation is taxable income under section 22 (a) or a gift excludible under section 22 (b) (3), Internal Revenue Code of 1939.

We have found that the fellowship payment to the petitioner was a gift. On this issue the controlling factor is the intent of the payor. *Bogardus* v. *Commissioner*, 302 U. S. 34 (1937). It is obvious that the foundation intended it as a gift. The object of the foundation is to *aid* scholars, scientists, and artists in the prosecution of their labors. The donor of the capital fund stated that the income was to be used *to provide opportunities for men and women to carry on advanced study.* The secretary of the foundation testified that the fellowship awards were intended as gifts.

The respondent argues that the award was paid as compensation for services to be rendered by the petitioner, saying that it was granted on the basis of the petitioner's qualifications to do the work required by his project, which project was approved by the foundation with the expectation of results consistent with the petitioner's qualifications, and that to the extent there is any donative intent in making the award the beneficiary is society at large and not the petitioner whose services were expected in return for the grant. It is pointed out that the application showed the potential value of the results of the project to future scholars and historians, and that the amount of the award was in approximately the amount of the salary loss to the petitioner in taking sabbatical leave. It is argued that the purpose of the foundation is to promote the advancement of knowledge and to add to the literary and scientific power of the country and that the fulfilment of this purpose depends upon the selection of projects from which results can be expected, and hence it is not unreasonable to conclude that the foundation adopts as its own the projects proposed by the fellows it selects.

This argument misconceives the motives of both the petitioner and the foundation. The foundation does not accomplish its purposes by employing scholars or scientists to carry out projects. Its method is to make *gifts* to persons whose past achievements and present abilities, as shown by the foundation's investigation, merit financial assistance to enable them to carry out their own projects of creative work or self-improvement.

The foundation has no program of projects, and does not select fellows entirely on the basis of their proposed projects. Since the foundation is a corporation exempt from income tax, it cannot give away money indiscriminately, but must exercise some selectivity in

choosing the recipients of its aid. Accordingly, it asks for a statement of the work proposed to be done by each applicant and it investigates his qualifications and capabilities. The secretary of the foundation testified that the objective is to choose the most meritorious individuals, those who can best advance their training or creative achievements, rather than the projects considered most beneficial to the public. The emphasis, he said, was upon individuals, not projects. In providing funds to qualified persons to carry out their own projects of creative work or self-advancement the foundation is carrying out the desires of its founders to *give* others educational opportunities such as their son would have had if he had lived. Here it made a gift to aid a worthy scholar that he might accomplish more readily a self-imposed task which would add to his professional standing. As an incidental result of the research the petitioner has since been able to give graduate seminars in 18th century English drama.

The petitioner, on his part, did not offer his services to the foundation to do research under its direction upon a subject selected by it, nor was he seeking to sell or realize upon the prospective result of his labors. What he sought was a gift for the support of his family while he devoted his time to this project of his own intense interest. While benefit to future scholars and historians might result from the work his primary motive was to fulfill the task that had aroused his enthusiasm and commanded his attention since 1933.

The award in this case bears no resemblance to the payments for a research fellowship in *Ephraim Banks*, 17 T. C. 1386. Banks was appointed a research fellow by the Polytechnic Institute of Brooklyn. The institute was carrying out a research project under a contract with the Navy and appointed fellows to do certain work in the Department of Chemistry under directions of Professor Ward. Banks' work included making stereoscopic measurements of the light output and light absorption of various materials and studying the structure of materials by X-ray techniques. He described his work in a paper which was accepted in partial satisfaction of the requirements for a doctor's degree which he subsequently received. In the cited case the work was performed to carry out a contract between the institute and the Government. It was assigned by and done under orders of supervisors, reports were required, and the relation between the fellow and the institute was that of employee and employer. The same situation existed in *Ti Li Loo*, 22 T. C. 220. In the present case no such relationship existed. The grant was in the nature of a scholarship to facilitate the further education or training of the recipient even though in this case he held several degrees. His research was in a field of his own selection. He was under no obligation to perform services for the foundation or any other person. The arrangement

between the foundation and the fellow is not an employment contract. The foundation does not assume or stipulate for authority to direct and control the fellow as to the details and means by which the project is carried out, to require conformity with a schedule of working hours, to supervise the work to see that it is satisfactorily done, or to require reports on the progress of or the completion of the task. The payments are not for services.

The respondent also urges that the case is controlled by *Robertson* v. *United States*, 343 U. S. 711 (1952). In that case the taxpayer submitted a symphony and won an award which had been offered for the best symphonic work written by a composer native to the Americas. The award was offered in 1945 by Henry H. Reichhold, who was president of the Detroit Orchestra, Inc. The terms of the offer provided that none of the compositions could be published or publicly performed prior to entry, that each composition receiving an award would remain the property of the composer, and that the composer would grant the Detroit Orchestra, Inc., all synchronization rights as applied to motion pictures, all mechanical rights as applied to recordings, the exclusive right to authorize the first performance in each of certain countries, and the right to designate the publisher. The taxpayer had in the years 1936 to 1939 composed a symphony which had not been performed. He submitted it and won the principal award in 1947. He contended that the amount received was a gift and not taxable income. The Court stated (p. 713):

In the legal sense payment of a prize to a winner of a contest is the discharge of a contractual obligation. The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract. See 6 Corbin on Contracts Section 1489; Restatement, Contracts, Section 521. The discharge of legal obligations—the payment for services rendered or consideration paid pursuant to a contract—is in no sense a gift. The case would be different if an award were made in recognition of past achievements or present abilities, or if payment was given not for services, see Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 730, 49 S. Ct. 499, 504, 73 L. Ed 918, but out of affection, respect, admiration, charity or like impulses. Where the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.

The respondent contends that the payment to the petitioner was similarly in discharge of a contractual obligation, that the foundation's offer for applications for fellowships was open to anyone, and that the petitioner's acceptance of the offer created an enforceable contract under which the foundation was obligated under its charter and the laws of the State wherein it was chartered. The contention is made that the application asked for an award to permit the applicant to work on this project and the letter of notification contained a statement that it was awarded on condition that the petitioner do no other work during the period of the fellowship.

The holding in the *Robertson* case has no application here. In that case there were certain terms in the offer which the composer accepted in submitting his composition. He agreed to grant to the Detroit Orchestra, Inc., rights as to motion pictures and recordings, the right to authorize the first performance in each of certain countries, and the right to designate the publisher. These were valuable rights. While the donor of the prize did not himself receive these rights, he caused them to be given to the Detroit Orchestra of which he was the president and which he desired to benefit. In the present case the foundation received no rights of value for itself and bargained for no rights for any other person.

Nor did the foundation enter into a contract with the petitioner within the intent of the *Robertson* case. The offered prize in that case was of a fixed amount payable in any event and was held to be accepted by the contestants when they submitted compositions. In the present case there is no such offer. The foundation made no promise to pay a fixed number of awards or a specified sum of money and might have refused all applications in any year. Although it stood ready to assist worthy applicants who might be chosen by its board of selection, this is no commitment sufficient to create an enforceable contract by the filing of an application proposing a project. Even if an offer can be said to exist, the applications do not amount to acceptances. The application here was for funds to enable the petitioner to do something he wanted to do at the time and in the manner of his own choosing. This is not a sufficient consideration to create an enforceable contract.

The respondent refers to the "conditions" stated in the document sent the petitioner with the notification of the award as constituting conditions of the "contract," particularly the satement that he should engage in no other occupation during the period of the fellowship than the activities specified in his statement of the project. Conditions such as these do not necessarily convert what is intended as a gift into a contract for services. A gift may be made subject to certain conditions. A payment made subject to a condition is or is not a gift depending upon whether the parties intended compliance with the condition as consideration for the payment. Restatement, Contracts, p. 82; 1 Williston, Contracts (rev. ed. 1936), sec. 112; *Stelmack* v. *Glen Alden Coal Co.*, 14 A. 2d 127, 128, 129, (Pa., 1940). Compliance with the conditions stated by the foundation was clearly not intended as consideration for the award.

The petitioner was not "offering the results of his professional skill to win prize money," as in the *Robertson* case. (See the opinion of the Court of Appeals for the Tenth Circuit, 190 F. 2d 680, at p. 683.) Nor was the foundation offering a prize in the sense of other prize

cases such as *Herbert Stein*, 14 T. C. 494 (1950), and *Amirikian* v. *United States*, (C. A. 4, 1952) 197 F. 2d 442.

The fellowship award was not paid pursuant to a contract and was not a payment for services. It was a gift excludible under section 22 (b) (3) of the 1939 Code.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

---

TURNER, *J.*, dissenting: The facts being as they are, I find myself unable to see in the payments made by the foundation to the petitioner the transfer and receipt of a gift, excludible from gross income under section 22 (b) (3) of the Internal Revenue Code of 1939, and not the receipt of compensation for services rendered, which is gross income under section 22 (a).

In making his proposal to the foundation, petitioner made the claim that he had to earn a living for himself and family, and could take time to do the work outlined only if the foundation would agree to make specified payments therefor to supplement his sabbatical salary and other income, and by the terms of the agreement reached, and under which the payments here in question were made, the foundation became obligated to make the payments only when and as the services were performed. Furthermore, the agreement was to run for a period of 12 months from September 1, 1950, at a "stipend" [1] of $3,000. Petitioner could engage in no other occupation during that time, and only the foundation had the right to waive the conditions specified. In short, the performance of the services or the doing of the work agreed upon was a prerequisite, or the *quid pro quo*, for the money received. It falls squarely within the provisions of section 22 (a), wherein it is provided that "gross income" includes "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations," etc.

Seemingly, there is a natural urge to say that payments which serve to promote the development of literature and art are free of tax burdens. But whether or not they are so free, is a matter which Congress alone has the rightful power and authority to determine, and in keeping therewith, Congress has made provision in the Internal Revenue Code for the exemption of corporations, funds, and foundations which are engaged exclusively, and not for profit, in educational and literary work. It has also seen fit to allow to taxpayers, subject to certain limitations, deductions for contributions made to such

---

[1] In Webster's New International Dictionary, the word "stipend" is defined as "Settled pay or compensation for services, whether paid daily, monthly, or annually," and under synonyms, the only reference is "See Wages."

corporations, funds, or foundations, but at no place has it exempted compensation, salaries, or stipends paid to individuals who are working for or under the foundations in carrying on such educational or literary work. To the contrary, the stipend or compensation of such individuals is included in the broad definition of gross income under section 22 (a).[2] That the net result in a case such as this might be beneficial to the public as a whole is no more ground for exemption of the stipend or compensation from income tax, than in the case of the recompense of a social worker, community chest employee, or teaching fellow at a university, or other paid workers in or under the Guggenheim Foundation itself. It would be quite difficult to imagine any case where the advancement of public interest only was more wholly the sole objective of the work to be done, than in the case of the composer whose compensation as taxable income was in question in *Robertson* v. *United States*, 343 U. S. 711. In that case, nevertheless, the Supreme Court held, in language even more forcibly applicable here, that the payment was made under a contract for services rendered and, as such, was taxable income. However strong the feeling or desire may be that the doing of such work as that herein be fostered and promoted, we must leave to Congress the prerogative of saying that compensation for services rendered in the doing of such work is to be free from taxation. In my opinion, Congress has not so provided.

MURDOCK, OPPER, LEMIRE, and FISHER, *JJ.*, agree with this dissent.

---

[2] See, however, section 117 of the Internal Revenue Code of 1954, wherein for taxable years beginning after December 31, 1953, Congress has, subject to certain conditions and limitations, specifically excluded from gross income in the case of an individual any amount received as a scholarship at an educational institution, or as a fellowship grant.