CLARENCE PEISS AND EVELYN PEISS, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91652. Filed April 19, 1963

Clarence Peiss, pro se.
*Helen A. Viney*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioners' 1956 income tax in the amount of $1,219.45.

The issues are (1) whether all or any portion of $6,000 received by Clarence Peiss in 1956 from the John and Mary R. Markle Foundation, is includable in his gross income and (2) whether he is entitled to a deduction for the professional use of his house.

#### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

The John and Mary R. Markle Foundation was created in 1927 by John Markle with the stated purpose "to promote the advancement and diffusion of knowledge * * * and the general good of mankind." According to the printed 1956–57 annual report the foundation was established with an initial endowment of $3 million,

which was increased upon the death of the founder in 1933 to approximately $14,700,000. This printed report also states:

Until his [founder's] death in 1933 and for a short time after, the Foundation made grants for social welfare; from 1935–47 emphasis was on grants for medical research; and from 1947 to date the major program has been Grants for Scholars in Medical Science.

Various brochures and pamphlets of the foundation described the operation of the Scholars in Medical Science program. In essence, it consists of a grant in the total sum of $30,000 payable $6,000 a year for 5 years to assist promising young medical school staff members to the end that they will be induced to continue their academic careers of medical research and teaching and forego careers in private practice and industrial laboratories. The stated purpose of the program for grants for scholars in medical science is set forth in the foundation's pamphlet, as follows:

The purpose of this program is to improve medical research and education by assisting some of the promising young teachers and investigators who too often, for financial or other reasons, must forego academic careers to enter private practice or industrial laboratories. By steeling them against tempting positions outside their chosen field of academic medicine, by protecting them from being overloaded with any one type of academic responsibility, by contributing funds toward their support, the Foundation hopes to give them an opportunity to prove their ability within five years and become permanently established as research workers and teachers.

Scholars are selected by the directors of the foundation from the candidates nominated by approved medical schools with each school nominating one candidate. The number of nominations each year has varied between 45 and 62 and the number of scholars appointed annually has varied from 13 to 25. In 1955 the income of the foundation for the first time exceeded $1 million. During all of the years since the scholars in medical science program was started in 1947, the foundation has devoted most of its income in payment of the grants under that program. It handled the payments by setting up on its books an appropriation of $30,000 in favor of the newly selected Markle scholar with $6,000 to be paid July 1 of each year for 5 years. The foundation actually sent the $6,000 to the medical school of which the Markle scholar was a staff member on July 1 of each year and the school would pay the money to the scholar. The school merely gave the scholar one monthly check which included $500 of the Markle Foundation money, plus any additional salary paid out of school funds to the scholar. If the Markle scholar transferred to another medical school and became a faculty member of that school, the grant would follow to the new school, but if he should cease to be a full-time faculty member of a medical school during the 5-year period, the grant would end.

During the academic year 1952–1953, while petitioner was assistant professor of physiology at St. Louis University School of Medicine, he was awarded the John and Mary R. Markle grant.

During the academic year ended in 1954, petitioner transferred from St. Louis University to the Stritch School of Medicine, Loyola University, Chicago, Ill. There he served as an assistant professor until the academic year 1955, when he became an associate professor of physiology. Petitioner was engaged in teaching and in various research projects at both St. Louis and Loyola Universities and during the years in question was not a candidate for any degree. Petitioner spent about 25 percent of his time in performing his teaching obligations as a faculty member of the Stritch School of Medicine. Petitioner was required to remain a full-time faculty member in order to receive the Markle grant but the school had no requirement that faculty members pursue research.

In the joint income tax return for 1956, which Clarence and Evelyn Peiss filed with the district director of internal revenue at Chicago, there was reported salary income received from Loyola University in the amount of $3,750.02.

Petitioner actually received in 1956 $9,750.02 in monthly checks from Loyola University (less income tax withholding) but $6,000 was from funds provided by the John and Mary R. Markle Foundation.

During 1956 petitioner resided in a house in Wilmette with his wife and one child. Petitioner used his residence in connection with his professional activities. He used his home for meetings with graduate students, to prepare lectures, and to prepare articles and manuscripts for publication in books and scientific journals. He maintained some research equipment at his home where he did a major portion of his research analysis. Petitioner also maintained a library of scientific books at his home. He was unable to perform these various activities at his office at the school because there was not sufficient time for it even in an extended working day and also because his office at the school was not separated from the research laboratory and the joint office and research laboratory was in constant use by the graduate students.

Petitioner's status as a professor of physiology was determined by his ability and productivity as a researcher and teacher. These abilities were the primary determinants for advancement in both his professional rank and salary.

On his income tax return for that year he took a deduction in the amount of $333.05 for what he termed "Professional use of home." Respondent's determination of deficiency is based upon his inclusion of the $6,000 in petitioner's gross income and his disallowance of the $333.05 as a deduction.

OPINION

Petitioner appeared pro se and tried his case with much skill. He first contends the $6,000 paid by the foundation was a gift and that his case is ruled by *George Winchester Stone, Jr.,* 23 T.C. 254, where the $1,000 received by the taxpayer in 1950 from the Guggen-heim Foundation as part of a fellowship grant was held a gift and therefore excludable from gross income under section 22(b) (3), I.R.C. 1939.[1] It can be admitted the facts of that case are much like the facts here and if the law had remained unchanged, the *Stone* case would be authority for petitioner's position. However, when Congress enacted the 1954 Code it legislated specifically with respect to scholarship and fellowship grants in section 117.[2] *Frank Thomas*

---

[1] Petitioner really argues that because this was a 1953 grant of $30,000 taxability of the 1956 payment should be determined under the 1939 Code which contained no statute specifically excluding scholarship or fellowship grants from income but did contain a statute excluding gifts, section 22(b) (3), and in *George Winchester Stone, Jr.,* 23 T.C. 254, a similar grant was held to be a gift within the above statute. Obviously, taxability of the 1956 payment would be governed by the 1954 Code but the same gift exclusion statute is in that Code, section 102, so his argument in essence is that the general gift exclusion statute contained in both Codes is controlling because of the *Stone* case.

[2] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

(a) GENERAL RULE.—In the case of an individual, gross income does not include—
   (1) any amount received—
      (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or
      (B) as a fellowship grant, including the value of contributed services and accommodations; and
   (2) any amount received to cover expenses for—
      (A) travel,
      (B) research,
      (C) clerical help, or
      (D) equipment,
   which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.
(b) LIMITATIONS.—
   (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.
   (2) INDIVIDUALS WHO ARE NOT CANDIDATES FOR DEGREES.—In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).
      (A) Conditions for Exclusion.—The grantor of the scholarship or fellowship grant is an organization described in section 501(c) (3) which is exempt from tax under section 501(a), the United States, or an instrumentality or agency thereof, or a State, a Territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.
      (B) Extent of Exclusion.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).

*Bachmura*, 32 T.C. 1117. It is no longer of interest whether transfers that are scholarship or fellowship grants are gifts. The exclusion from the gross income of the grantee is governed by section 117, *supra*, which places restrictions and limitations on such exclusion.

The grant in the instant case is a plain fellowship grant. It is admitted the medical schools involved qualify as educational institutions as defined in section 151(e)(4), I.R.C. 1954, and petitioner was not at any time since prior to the 1953 award a candidate for a degree.[3] It is also admitted John and Mary R. Markle Foundation is an organization such as described in section 501(c)(3) and exempt from tax under section 501(a), I.R.C. 1954.

Section 117, *supra*, does not contain any definition of a fellowship grant but respondent in his regulations (sec. 1.117–3(c), Income Tax Regs.), has stated: "A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." The grant here falls well within respondent's general definition of a fellowship grant. The essence of respondent's argument is that the award from the Markle Foundation constituted compensation and was substitution for salary from the school. Petitioner's teaching obligations at the school were a minor part of his work. He spent about 25 percent of his time in fulfilling his teaching obligations. During the balance of the time he was free to engage in research activities in projects of his own choosing. He would receive the grant if he performed no research. He had to remain a faculty member in order to receive the grant but the university had no requirement that faculty members pursue research.

The grant here was not compensation for services to be performed. It was much like the Guggenheim grant in *George Winchester Stone, Jr.*, *supra*, and there we held the award was not paid to the grantee as compensation for services. Under respondent's regulation, if grants do not represent payment for services and are designed to enable the recipient "to pursue studies or research [they] are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity * * *." Sec. 1.117–4(c)(2), Income Tax Regs. Here it clearly appears the primary purpose of the grant was to further the education and research activities of the Markle scholar.

Respondent, in his explanation of adjustments in his notice of

---

[3] It is stipulated petitioner received the following degrees from Stanford University, Palo Alto, Calif.: In 1947, A.B. in Biological Sciences; in 1948, M.A. in Physiology; in 1949, Ph. D. in Physiology.

deficiency, first states it is determined the $6,000 grant "does not constitute a fellowship or scholarship grant within the purview of Section 117" and then he states "Alternatively, if it is held that the sum of $6,000.00 * * * qualifies as a fellowship or scholarship grant within the purview of Section 117 of the Internal Revenue Code of 1954, it is determined that only $3,600.00 of such sum is excludable." On brief respondent contends the correct amount excludable under section 117 would be $1,800.

The record shows petitioner received $6,000 from the John and Mary R. Markle Foundation in 1956 which was paid at the rate of $500 a month. Section 117(b)(2)(B) limits the exclusion from income to $300 a month. We therefore hold $3,600 of the grant qualifies as an exclusion under said section 117 in 1956.

Petitioner devotes much of his brief to an argument that the grant here awarded to him meets all of the requirements of section 74, I.R.C. 1954, granting exclusion from gross income for certain prizes and awards.[4] But the first subsection of that statute (sec. 74(a)) excepts from the operation of the statute the section 117 scholarship and fellowship grants. Petitioner's entire argument falls with our holding that this was a section 117 scholarship grant.

Petitioner testified in support of his deduction of $333.05 for what he termed professional use of his home. He told of the use of his home for meetings with graduate students, preparation of lectures, and all of his writings, including manuscripts for scientific journals as well as articles published in books. The stipulation filed in this case contains a list of the titles of 69 articles published by petitioner with 45 of them published prior to 1957. Petitioner maintained a library of scientific books in his home and some research equipment was kept permanently in his home. The major portion of his research analysis was performed in his home. Petitioner explained that his status as a professor of physiology is determined by his ability and productivity as a teacher and researcher; that these abilities are the primary determinants in his advancements in rank in his profession and also advancements in salary. Petitioner testified the work done in his home just could not be done in his office at the school

---

[4] SEC. 74. PRIZES AND AWARDS.

(a) GENERAL RULE.—Except as provided in subsection (b), and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

(b) EXCEPTION.—Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—

(1) the recipient was selected without any action on his part to enter the contest or proceeding; and

(2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.

partly because there was not adequate time even in an extended working day and partly because his office space at the school was not separated from the research laboratory which was in constant use by the graduate students.

Respondent did not cross-examine petitioner on this deduction issue. We feel the evidence adequate to establish the deduction petitioner took as an ordinary and necessary business expense under section 162, I.R.C. 1954. Respondent argues that petitioner offered no proof as to how he arrived at the figure of $333.05 and no proof that he used some allotted portion of his home exclusively for an office. His income tax return shows he used a formula of one-fifth of total cost of utilities and insurance, and some depreciation. No matter how such expenses are computed the resulting figure is always to some extent an estimate. This Court was much impressed by petitioner's honesty and fairness. The amount of $333.05 was not unreasonable. We hold for petitioner on the issue.

*Decision will be entered under Rule 50.*