MARC W. SPIEGELMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15829–92.        Filed March 8, 1994.

*James B. Lewis, Hedy Forspan,* Sloane Smith (specially recognized), and Michal Bolozky (specially recognized), for petitioner.

*Lyle B. Press,* for respondent.

DAWSON, *Judge*: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge*: By notice of deficiency, respondent determined a deficiency in petitioner's Federal income tax and an addition to tax under section 6662(a) in the amounts of $1,790 and $358, respectively, for taxable year 1989.

After a concession by respondent,[2] the only issue for decision is whether amounts received by petitioner in 1989 pursuant to an academic fellowship are subject to tax on self-employment income.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioner resided in New York, New York, at the time the petition was filed in this case.

Petitioner holds a bachelor of arts degree in geology and geophysics from Harvard University and a Ph.D. from the University of Cambridge in England. During his doctoral studies in early 1988, he applied for, and was subsequently awarded, a 1-year Lamont Post-Doctoral Research Fellowship (the fellowship) from Columbia University. Petitioner's term as a fellow began in July of 1989 and continued through June of 1990. Under the fellowship he received $27,500, half of which was disbursed to him in 1989.

The fellowship is a privately funded competitive award; the fellows are selected based on their applications submitted to Columbia University. The fellowship provides funds and office space to individuals to allow them to conduct independent scientific research. The research is conducted at the Lamont-Doherty Geological Observatory. Part of the value of the fellowship is the informal discourse and the exchange of ideas with members of the professional staff at that facility and with other fellows concerning their research. The fellows

---

[1] Unless otherwise indicated, section and chapter references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent stipulated that petitioner is not liable for the addition to tax under sec. 6662(a).

choose their own subjects and determine how best to conduct their research; they do not, however, earn a degree or credit leading to a degree for their endeavors. They have no teaching or other responsibilities, and Columbia University has no legal right to, or interest in, the fruit of the recipients' labors. The fellows are not required to observe office hours, and they are not required to report to a supervisor.[3]

Petitioner selected as his research subject the physics and geochemical consequences of the migration of magma from the deep earth to the earth's surface. He pursued this topic throughout the term of the fellowship, and subsequently published his findings in scientific journals, for which he received no compensation.

Petitioner received a Form 1099-MISC from Columbia University, indicating $13,750.02 in "nonemployee compensation" for 1989, which petitioner reported on his Form 1040A in the "Wages, salaries, tips, etc." column. Petitioner paid income taxes on this income. Respondent determined, however, that petitioner was also liable for tax on self-employment income with respect to the amounts received under the fellowship.

OPINION

Section 1401 imposes a tax on the self-employment income of every individual for old-age, survivors, and disability insurance and for hospital insurance. The term "self-employment income" refers, with certain exceptions not relevant here, to net earnings from self-employment or net income "derived by an individual from any trade or business carried on by such individual". Sec. 1402(a) and (b).

Petitioner's research project at Columbia University involved the examination of molten rock that issues from volcanic eruptions as lava to infer the geological activity occurring 100 miles beneath the earth's crust. Our task, however, proceeds in reverse order. We must dig into the lower strata of the history of the Federal tax system to unearth the Rosetta stone that will decipher issues of fellowship grants in terms of the current self-employment income tax. In doing so we begin by examining the genesis of the exemption from

---

[3] The parties have stipulated that petitioner is not an employee of Columbia University, and the facts appear to support this conclusion.

gross income for scholarships and fellowship grants, and follow the statutory metamorphosis of that exemption.

The arguments advanced by the parties focused primarily on whether petitioner's scholastic activities constitute a trade or business. However, given the history of the tax treatment of scholarships and fellowship grants, we think this focus obscures the main issue. It seems more meaningful to focus on the source from which the fellowship grant is *derived*. The Tax Court reads the term "to derive" in its ordinary sense, as meaning "to take or receive from a specified source. Income which derives from self-employment is income which originates from it, which flows from that source". *Milligan v. Commissioner*, T.C. Memo. 1992–655. "[A]ny income must arise from some actual (whether present, past, or future) income-producing activity of the taxpayer before such income becomes subject to * * * self-employment taxes". *Newberry v. Commissioner*, 76 T.C. 441, 446 (1981).

## 1. *Scholarships and Fellowship Grants Prior to 1954*

Prior to the enactment of the Internal Revenue Code of 1954, ch. 736, 68A Stat. 3 (1954 Code), the tax treatment of scholarships, fellowship grants, prizes, and awards depended on whether the particular transfer was classified as a gift. See S. Rept. 1622, 83d Cong., 2d Sess. 13, 17 (1954). If a gift, the amount was excluded from gross income under section 22(b)(3) of the 1939 Code and its antecedents, the predecessors of section 102(a). [4] See Sneed, Configurations of Gross Income 131–142, 161–169 (1967).

In determining whether scholarships and fellowship grants were excludable as gifts, the Commissioner and the courts essentially focused on whether services were required of the recipient. The Commissioner initially took the position that any type of activity performed by the recipient removed it from the gift exclusion. I.T. 4056, 1951–2 C.B. 8. That stance was rejected in part by this Court, which fashioned a general rule of thumb in dealing with the inclusion in gross income of scholarships and fellowship grants. *Loo v. Commissioner*, 22 T.C. 220 (1954), and *Stone v. Commissioner*, 23 T.C. 254 (1954), reflect the parameters of this rule. In *Loo*, the recipi-

---

[4] Sec. 102(a) provides that "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

ent of a fellowship grant was required to apply his skill and training to advance a certain research project. This Court held that the payments received were income because they were in the nature of compensation.

On the other hand, in *Stone*, this Court held that a fellowship grant from the Guggenheim Foundation was an excludable gift. The Commissioner argued that the funds were provided to the taxpayer "on the basis of the petitioner's qualifications to do the work required by his project, which project was approved by the foundation with the expectation of results consistent with the petitioner's qualifications". *Stone v. Commissioner, supra* at 261. The Commissioner further argued that if there is a gift, it is a gift to society at large not to the taxpayer, stating:

the purpose of the foundation is to promote the advancement of knowledge and to add to the literary and scientific power of the country and that the fulfilment [sic] of this purpose depends upon the selection of projects from which results can be expected, and hence it is not unreasonable to conclude that the foundation adopts as its own the projects proposed by the fellows it selects. [*Id.*]

This Court rejected those theories, finding instead that the foundation intended to make a gift, by stating:

The foundation does not accomplish its purposes by employing scholars or scientists to carry out projects. Its method is to make *gifts* to persons whose past achievements and present abilities, as shown by the foundation's investigation, merit financial assistance to enable them to carry out their own projects of creative work or self-improvement. [*Id.*]

This Court noted that "In providing funds to qualified persons to carry out their own projects of creative work or self-advancement the foundation is carrying out the desires of its founders to *give* others educational opportunities". *Id.* at 262. In this sense, the foundation served as a conduit for the grantor to provide funds to recipients.

This Court also rejected the notion that the grant constituted compensation for research services, stating:

The petitioner was not "offering the, results of his professional skill to win prize money," * * *. * * * Nor was the foundation offering a prize in the sense of other prize cases * * *.

The fellowship award was not paid pursuant to a contract and was not a payment for services. It was a gift excludible under * * * [the predecessor of section 102(a)].

[*Id.* at 264–265; citations omitted.]

## 2. *Scholarships and Fellowship Grants Between 1954 and 1986*

The 1954 Code included provisions that specifically addressed scholarships and fellowship grants as well as the related problem of prizes and awards.[5] Section 117(a) of the 1954 Code provided a general exclusion from income of amounts received as a scholarship at an educational institution or as a fellowship grant, including the value of services and accommodations as well as amounts received for certain incidental expenses. The legislative history of section 117 indicates that the provision was included in the 1954 Code because "The basic ruling of the Internal Revenue Service which states that the amount of a grant or fellowship is includible in gross income unless it can be established to be a gift has not provided a clear-cut method of determining whether a grant is taxable." S. Rept. 1622, *supra* at 17.

Congress did not define the term "scholarship" or "fellowship grant". The regulations and case law filled the gap. Section 1.117–3(c), Income Tax Regs., provided, inter alia:

*Fellowship grants.* A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research.* * *

Section 1.117–4(c)(2), Income Tax Regs., amplified:

amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a * * * fellowship grant * * * if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services * * *

---

[5] Sec. 74(a) of the 1954 Code mandated the inclusion in gross income of amounts received as prizes and awards, including scholarships and fellowship grants not otherwise excluded under sec. 117. *Cass v. Commissioner*, 86 T.C. 1275, 1279–1280 (1986); sec. 1.74–1(a)(1), Income Tax Regs. The regulations indicate that "The exclusion from gross income of an amount which is a scholarship or fellowship grant is controlled solely by section 117"; thus, scholars and fellows could not avail themselves of the exclusions under sec. 74(b) or 102(a). *Cass v. Commissioner, supra* at 1280–1281; sec. 1.117–1(a), Income Tax Regs.

Not all funds received by a scholar constituted a scholarship or fellowship grant for purposes of section 117. The Supreme Court noted that generally scholarships and fellowship grants are "relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Bingler v. Johnson*, 394 U.S. 741, 751 (1969); cf. *Commissioner v. Duberstein*, 363 U.S. 278, 285–286 (1960).

Section 117(b) of the 1954 Code limited the broad exclusion of section 117(a). In the case of a fellowship grant awarded to a non-degree-seeking individual, the exclusion was allowed only if the grantor was one of the tax-exempt organizations or governmental units described in section 117(b)(2)(A). Moreover, section 117(b)(2)(B) limited the exclusion from income to $300 for each month of the grant for the taxable year, for a maximum of 36 months, for non-degree-seeking individuals.

Section 117(b)(1) also limited the exclusion from gross income where a degree-seeking recipient performed certain services: "[Section 117(a)] shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant." Section 117(b)(1), however, provided an exception to the limitation:

> If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

This Court construed section 117(b)(1) as applicable only after a determination that the payment possessed the "normal characteristics" of a scholarship or fellowship grant. *Reese v. Commissioner*, 45 T.C. 407, 413 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967).

> [T]he legislative history shows that the House intended that there first be a scholarship or fellowship grant and then decreed that if part-time services were involved, *the portion of the grant* allocable thereto was nevertheless to be *includable in gross income.* All that the Senate did by adding the * * * [exception to the limitation] was to deal with the situation *where a dual condition existed*—i.e., the part-time services were required to

obtain the degree and were *also* a prerequisite to receiving the scholarship. In such a case, the Senate amendment decreed that part-time services were not to be considered as being a condition of the scholarship so as to fall within the limitation imposed by the first sentence of section 117(b)(1); consequently, there was to be no allocation under such circumstances. [*Id.* at 415.]

The regulations further limited the exclusion under section 117(a) where the award represented compensation for employment services, or where the recipient's study and research primarily benefited the grantor of the award. Sec. 1.117–4(c), Income Tax Regs. This regulation was upheld by the Supreme Court in *Bingler v. Johnson, supra* at 754:

One may justifiably suppose that the Congress that taxed funds received by "part-time" teaching assistants, presumably on the ground that the amounts received by such persons really represented compensation for services performed, would also deem proper a definition of "scholarship" under which comparable sorts of compensation * * * are likewise taxable." [Fn. refs. omitted.]

The term "scholarship" or "fellowship grant" did not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies or research where the grantor was motivated by family or philanthropic considerations. Sec. 1.117–3(a), (c), Income Tax Regs. In that case, the overlapping gift considerations under section 102(a) came into play. Thus, it was the Commissioner's position that where an individual transferred funds to a university to be disbursed to a particular researcher, the amount was not a scholarship or fellowship grant within the parameters of section 117. See Rev. Rul. 61–66, 1961–1 C.B. 19. The university in that situation was a mere conduit for the grantor; as the grantor was not a section 501(c)(3) organization, the stipend did not come under the statutory requirements for section 117 exclusion. However, the payments were excludable from gross income as a gift under section 102(a), as the grantor was motivated solely by philanthropic considerations. *Id.*

The conceptual changes wrought by the 1954 Code regarding the treatment of scholarships and fellowship grants were clearly not revolutionary. Section 117 of the 1954 Code and the regulations thereunder generally codified the dichotomy embodied in *Stone v. Commissioner*, 23 T.C. 254 (1954), and *Loo v. Commissioner*, 22 T.C. 220 (1954). But, while the

changes did take the discussion of scholarships and fellowship grants out of the miasma of the gift area, they did not obliterate the roots of the exemption from gross income. As was the case before passage of the 1954 Code, the inquiry still centered basically on whether the recipient was required to perform services or provide a benefit for another in a quid pro quo arrangement.

### 3. *Scholarships and Fellowship Grants After 1986*

Section 123 of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99–514, 100 Stat. 2085, 2112, modified the gross income treatment of scholarships and fellowship grants with amendments to section 117. Section 117(a), as amended, excludes from gross income "any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii)." The term "qualified scholarship" refers to "any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses." Sec. 117(b)(1), as amended. Consequently, the exclusion is eliminated for non-degree-seeking individuals.

Amended section 117(c) increases the limitations imposed by former section 117(b)(1); the exclusion does not apply to "that portion of any amount received which represents payment for teaching, research, or other services by the student required as a condition for receiving the qualified scholarship". Thus, the previous limitation relating to part-time employment services was expanded to apply to full-time employment as well, and the exception to the previous limitation, allowing the exclusion of payments for services required of all degree candidates, was completely eliminated.[6]

The modifications of TRA 1986 shifted the focus of the gross income exclusion of scholarships and fellowship grants from the *nature* of the grant (i.e., whether the compensation was

---

[6] The proposed regulations enlarge on sec. 1.117–4(c), Income Tax Regs., to reflect the expanded scope of amended sec. 117(c). Sec. 1.117–6(d), Proposed Income Tax Regs., 53 Fed. Reg. 21692 (June 9, 1988). Generally, the proposed regulations contemplate that *any* quid pro quo will mandate the inclusion of an allocable portion of a scholarship or fellowship grant, regardless of whether it otherwise constitutes a "qualified scholarship".

for services) to the *use* of the funds (whether used for personal purposes). H. Rept. 99–426 (1985), 1986–3 C.B. (Vol. 2) 1, 100, explains:

The committee believes that the exclusion for scholarships should be targeted specifically for the purpose of educational benefits, and should not encompass other items which would otherwise constitute nondeductible personal expenses. Similarly, the committee believes that, in the case of grants to nondegree candidates for travel, research, etc., that would be deductible as ordinary and necessary business expenses, an exclusion for such expenses is not needed, and the exclusion is not appropriate if the expenses would not be deductible. * * *

Congress, therefore, clearly understood that, while certain scholastic activities may constitute a trade or business, that conclusion did not necessarily follow, and the modifications in the tax treatment of scholarships and fellowship grants did not necessarily mean that amounts paid from a grant were derived from a trade or business.

### 4. *Scholarships, Fellowship Grants, Employment Taxes, and Tax on Self-Employment Income*

Chapter 21, commonly referred to as the Federal Insurance Contributions Act (FICA) (secs. 3101–3128), and chapter 23, commonly known as the Federal Unemployment Tax Act (FUTA) (secs. 3301–3311), impose certain taxes on employers and employees based on wages paid to employees. For self-employed individuals, roughly corresponding taxes are imposed on self-employment income derived from carrying on a trade or business. Ch. 2 (secs. 1401–1403); see *Newberry v. Commissioner*, 76 T.C. 441, 443 (1981). In the case of FICA and FUTA taxes, not all amounts of income under section 61 received from an employer are includable in the definition of wages. *Central Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21, 25 (1978).[7] And, with regard to tax on self-employment income, not all amounts of income received are derived from carrying on a trade or business. *Newberry v. Commissioner, supra.*

Generally, prior to the 1986 amendments, where amounts received from the pursuit of scholastic activities fell without

---

[7] The question in *Central Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21 (1978), was whether certain amounts received by employees were "wages" subject to income-tax withholding within the meaning of secs. 3401–3403. The definition of "wages" for FICA, FUTA, and withholding generally is the same. *Rowan Cos. v. United States*, 452 U.S. 247, 263 (1981).

the exemption for scholarships and fellowship grants because of services rendered by the recipient, the recipient was considered an employee and employment taxes were imposed under sections 3301–3311. See *Marquette Univ. v. United States*, 645 F. Supp. 1007, 1014–1015 (E.D. Wis. 1985). This flows from the original dichotomy between taxable and nontaxable scholarships and fellowship grants based on whether or not substantial services were required.

Self-employment income, however, is not necessarily the flip side of wages. Although there have been no cases dealing with tax on self-employment income with respect to scholarships and fellowship grants, the Commissioner has issued several rulings in the area. In Rev. Rul. 57–127, 1957–1 C.B. 275, the Commissioner was faced with a situation in which an individual received a grant that consisted of a salary from a Government foundation for the purpose of conducting a research project free from the direction and control of the institution. The foundation reserved rights in patents resulting from the research. The Commissioner ruled that the funds were not from a scholarship or fellowship grant because they were paid "primarily for services performed rather than for the furtherance of * * * [the recipient's] education and training", and the recipient was an independent contractor subject to tax on self-employment income. Rev. Rul. 57–127, 1957–1 C.B. 275.

On the other hand, in Rev. Rul. 60–378, 1960–2 C.B. 38, the Commissioner ruled that scholarships and fellowship grants are not subject to tax on self-employment income:

[Scholarships and fellowship grants] do not constitute income from a trade or business and, hence, are not to be included in the recipient's net earnings from self-employment for purposes of the Self-Employment Contributions Act. The terms "fellowship grant" and "trade or business" are inconsistent and mutually exclusive. Amounts received under a fellowship grant which qualifies as such under section 117 of the Code cannot be deemed to be income from a trade or business. The characterization of an award as a qualified "fellowship grant" extends to the whole of the grant, and the unexcluded portion may not be treated as the product of a trade or business for self-employment tax purposes, just as it may not be excluded as a gift, or prize or award.

Accordingly, even though part of a section 117 scholarship or fellowship grant must be included in the recipient's gross income because of the limitations prescribed in [former] section 117(b)(2) of the Code, no part of

the grant is subject to the tax on self-employment income imposed by section 1401 of the Code. * * *
  [Rev. Rul. 60–378, 1960–2 C.B. at 39.]

We think that the pronouncement in Rev. Rul. 60–378, *supra*, was valid when issued and remains valid today despite the changes wrought by the 1986 amendments.[8] Although we recognize that such rulings are little more than a statement of a party's legal position and are not generally considered precedent by this Court, the underlying rationale of Rev. Rul. 60–378, *supra*, is sound. *Newberry v. Commissioner, supra* at 445. The ruling looked to pre-1986 section 117 for a definition of the term "scholarship or fellowship grant". The position is rooted in the pre-1954 Code's concept of "gift" in announcing that noncompensatory fellowship grants cannot be income from a trade or business, even in situations where they would be included in gross income.[9]

In dealing with post-1986 scholarships and fellowship grants, the Commissioner has recognized that portions of a scholarship or fellowship grant are not considered to be "wages" for FICA and FUTA purposes, even though they may be otherwise taxable, unless section 117(c) applies. Notice 87–31, 1987–1 C.B. 475, 476. Post-1986 section 117(c) excepts from the exemption "teaching, research, or other services by the student required as a condition for receiving the qualified scholarship or qualified tuition reduction." Thus, it would appear that the same dichotomy between taxable and non-taxable scholarships and fellowship grants used in *Marquette Univ. v. United States, supra*, is carried over in determining whether FICA and FUTA taxes are applicable.

The facts indicate that the grant at issue, although not excludable from gross income as a "qualified scholarship", is

---

[8] In this regard, we also note that the Commissioner currently treats scholarship and fellowship grants for purposes other than determining the inclusion in gross income the same as before the 1986 amendments. Following TRA 1986, the Internal Revenue Service announced that, for purposes of the private foundation self-dealing and taxable expenditure rules of secs. 4941 and 4945, the phrase "scholarships and fellowship grants which are subject to the provisions of section 117(a)", as used in former secs. 4941(d)(2)(G)(ii) and 4945(g)(1), would be interpreted as if sec. 117 had not been amended. "There is no indication in the legislative history * * * [of the amendment to sec. 117] that Congress intended to limit foundation grants to amounts excludable under section 117, as amended by the Act." Notice 87–31, 1987–1 C.B. 475, 477. Congress subsequently amended secs. 4941(d)(2)(G)(ii) and 4945(g)(1) to align them with the Internal Revenue Service's interpretation.

[9] The ruling is consonant with Rev. Rul. 55–258, 1955–1 C.B. 433, which held that an individual's sec. 74(a) prize income is not subject to tax on self-employment income despite the recipient's regular and continuous involvement in entering contests.

a scholarship or fellowship grant as defined by the case law and regulations interpreting section 117. The funds, despite Columbia University's designation as "nonemployee compensation", were not provided to petitioner as compensation for research services, and petitioner's efforts did not economically benefit Columbia University. Petitioner performed his research and studies primarily to further his own education and training, and the fellowship grant was bestowed upon him in recognition of and in furtherance of his pursuit of academic excellence.

Based on the foregoing, and consistent with the Commissioner's published interpretations on the subject, we believe that the fellowship grant in this case is not subject to tax on self-employment income unless it would be includable in gross income under section 117(c)—i.e., where services are required "as a condition for receiving" the grant. Amounts received as scholarships or fellowship grants such as the grant involved in this case are not paid as compensation to the recipient for services. The gift analysis used in *Stone v. Commissioner*, 23 T.C. 254 (1954), retains its vitality in tracing the source of such a noncompensatory scholarship and fellowship grant more from the "detached and disinterested" munificence of the grantor than from the activities of the recipient in carrying on a trade or business. The award is not income derived from a trade or business. Consequently, we hold that petitioner is not liable for tax on self-employment income.

To reflect the foregoing,

*Decision will be entered for petitioner.*