T.C. Memo. 1999-84

UNITED STATES TAX COURT

MICHAEL B. STREIFF AND LAUREN D. STREIFF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12017-97.                    Filed March 23, 1999.

<u>Felix S. Jacob</u>, for petitioners.

<u>Helen F. Rogers</u>, for respondent.

MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 183.[1]

Respondent determined a deficiency in petitioners' 1993 Federal income tax in the amount of $2,213.  The sole issue is whether certain amounts received by petitioners qualify for

_____

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

exemption as a qualified scholarship under section 117.
Petitioners resided in Owings Mills, Maryland, when the petition
was filed.

The facts may be summarized as follows.  Michael B. Streiff
(petitioner) is a medical doctor.  During 1993, petitioner was
engaged in a program at Johns Hopkins University School of
Medicine (Johns Hopkins) "to train biomedical
scientist/postdoctoral fellows in hematology research."  During
1993, petitioner received a stipend in the amount of $14,750 as a
fellowship grant from the National Institutes of Health (NIH).
The purpose of the grant was to provide financial support for
postdoctoral fellows interested in pursuing academic experimental
hematology.  The grant was not contingent upon any services for
or obligations to NIH or Johns Hopkins.  Petitioner spent
approximately 50 hours a week in the laboratory at Johns Hopkins
working on research.  Petitioner was not a candidate for a degree
at Johns Hopkins.

During 1993, petitioner was also fulfilling the requirements
to become board certified in hematology and medical oncology.
To qualify for the board exams, petitioner was required to
complete 18 months of experience with inpatient treatment in
hematology and oncology and 24 months of experience with
outpatient treatment.  During 1993, petitioner spent 2-1/2 days
per week in a clinic as part of his outpatient experience

requirement. The board certification process was separate from the hematology training program.

On their joint 1993 Federal income tax return, petitioners did not include in income the $14,750 fellowship grant received from NIH. Respondent determined that the grant was includable in income.

### Discussion

Section 61(a) defines gross income to mean all income from whatever source derived. The internal revenue statutes and/or case law, however, have recognized in one form or another an exemption for financial aid to persons pursuing education goals. See Spiegelman v. Commissioner, 102 T.C. 394 (1994). Prior to 1986, the exemption from income of scholarship or fellowship payments focused basically on whether the recipient was required to perform services or to provide a benefit for another in a quid pro quo arrangement. Id. at 399-402. The pre-1986 section 117 was amended by section 123 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2112. The 1986 change was designed to shift the focus of the tax exemption to the use of the funds. The legislative history highlights the congressional intent:

> The committee believes that the exclusion for scholarships should be targeted specifically for the purpose of educational benefits, and should not encompass other items which would otherwise constitute nondeductible personal expenses. [H. Rept. 99-426, at 100 (1985), 1986-3 C.B. (Vol. 2) 1, 100.]

Section 117(a) exempts from gross income "any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii)." A "qualified scholarship" means "any amount received by an individual as a scholarship or fellowship grant to the extent * * * that * * * such amount was used for qualified tuition and related expenses." Sec. 117(b)(1). Qualified tuition and related expenses are limited to "tuition and fees required for the enrollment" and "fees, books, supplies, and equipment required for courses of instruction". Sec. 117(b)(2). For purposes here, we primarily are concerned with two requirements of section 117--viz, whether petitioner qualifies as a candidate for a degree and whether amounts received were used for "qualified tuition and related expenses".

A.  Candidate for a Degree

The parties stipulated that petitioner was not a candidate for a degree in 1993. Ordinarily this would end the matter. Petitioner argues, however, that the requirements necessary for board certification in hematology and medical oncology should be viewed as the equivalent of a candidacy for a degree for purposes of section 117. Petitioner relies on an example given by the proposed regulations:

> Example (2). B is a scholarship student during academic year 1987-1988 at Technical School V located in State W. B is enrolled in a program to train individuals to become data processors. V is authorized by State W to provide this program and is accredited by an appropriate accreditation

agency. B is a candidate for a degree for purposes of this section. Thus, B may exclude from gross income any amount received as a qualified scholarship, subject to the rules set forth in paragraph (d) of this section. [Sec. 1.117-6(c)(6), Proposed Income Tax Regs., 53 Fed. Reg. 21692 (June 9, 1988).]

Petitioner contends that his situation is analogous to the example provided by the regulations. Petitioner argues that, while he was not receiving a degree, he was receiving training that would qualify him for board certification, the equivalent of meeting vocational training requirements.

Initially we note that these are proposed regulations and are essentially without precedential value. See Laglia v. Commissioner, 88 T.C. 894, 897 (1987), and cases cited therein. But, even if we were to accept the validity of the position espoused in the proposed regulations, petitioner does not meet the requirements. The grant was for financial support while petitioner was engaged in hematology research, not for the board certification process. As stipulated by the parties, petitioner's board certification process was separate from the grant. The grant neither requires nor contemplates that petitioner will be involved in the process of achieving board certification or any other type of training program.

In addition, even if we were to accept petitioner's argument that the grant is somehow linked to the board certification process, the board would have to meet the definitional requirements of an "educational organization" as provided by

section 170(b)(1)(A)(ii). Section 170(b)(1)(A)(ii) defines an educational organization as an organization that "normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on". Board certification is awarded by the American Board of Internal Medicine (Board). As far as we know, the Board does not maintain a curriculum, does not maintain a regular faculty, and does not have a student body. The Board is not an educational organization as defined by section 170(b)(1)(A)(ii).[2]

B. Qualified Tuition and Related Expenses

Section 117(b)(1) requires that qualified amounts be given and used for tuition or tuition-related expenses. In petitioner's case the funds were given for financial support, not for tuition or related expenses. Indeed, it appears that petitioner had no such expenses. The amounts received by petitioner from the grant were not amounts received as a qualified scholarship under section 117(b)(1).

C. Case Law

Despite the fact that petitioner fails to meet the statutory requirements of section 117, petitioner insists that the amounts he received are exempt under case law. Petitioners argue that

---

[2] Petitioners also suggest that Johns Hopkins should be viewed as the entity which provides the grant. Petitioner, however, was clearly not a degree candidate at Johns Hopkins.

petitioner meets the criteria for exemption established by Bieberdorf v. Commissioner, 60 T.C. 114 (1973), and Bailey v. Commissioner, 60 T.C. 447 (1973).  The facts in both Bieberdorf and Bailey are analogous to those of the present case.  In Bieberdorf the taxpayer was a medical doctor who received a grant from NIH for research in gastroenterology.  In Bailey the taxpayer was a medical doctor who received a grant from NIH as part of a training program in cardiorenal research.  In both cases, the amount of time spent in activities for the benefit of the hospital was deemed de minimis compared to the amount of time spent in research and training related to the grants, and we held that the taxpayers qualified for exemption under the pre-1986 section 117.

We may agree that petitioner meets the requirements of Bieberdorf and Bailey.  The problem is that these cases were decided under different statutory provisions.  By the 1986 amendments, Congress adopted a different statutory scheme requiring that the funds must be used by degree candidates for qualified tuition and related expenses.  Our holdings in Bieberdorf and Bailey are not germane to the provisions of section 117 that apply here.  Consequently, Bieberdorf and Bailey are not reliable precedent.

As a final matter, petitioner urges us to look beyond the text of the statute and, as a public policy matter, allow the grant to be exempt.  It is for Congress to resolve tension

between tax policies, and we apply the law that Congress writes. The language of the statute is plain and unambiguous.  The only function of the Court, therefore, is to apply the statute according to its language.  <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241 (1989).

<u>Decision will be entered</u>

<u>for respondent</u>.