T.C. Summary Opinion 2003-74

UNITED STATES TAX COURT

TEDDY R. MCGINTY, JR. AND CHERYL D. MCGINTY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10925-01S.            Filed June 12, 2003.

Teddy R. McGinty, Jr. and Cheryl D. McGinty, pro sese.

<u>William T. Murphy</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $1,100 in petitioners' Federal income tax for the taxable year 1999.  The issues for decision are:  (1) Whether petitioners failed to report $3,914.15 of income; and (2) whether petitioners are liable for self-employment tax on the $3,914.15.

Some of the facts in this case have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners lived in Long Beach, California. References to petitioner in the singular are to Cheryl D. McGinty.

Petitioners were married in April 1998.  From August 1996 through May 2000, petitioner attended the University of California at Berkeley (university).  Petitioner used her maiden name, Cheryl Gomez, while in college.  During most of petitioner's college years, her husband was in the United States Marine Corps stationed at Camp Pendleton in Southern California.

During the summer of 1999, petitioner lived with her husband in Southern California.  Upon returning to the university for the 1999 fall semester, petitioner sought housing.  On a housing list provided by the university, petitioner found a listing placed by Harry S. Dixon.  The listing provided for room and board for a student in exchange for services provided at Mr. Dixon's home. Petitioner interviewed with Mr. Dixon and was told that her

duties would include preparing meals, cleaning, laundry, typing letters, and answering the phone. After petitioner agreed to perform the duties, Mr. Dixon offered her the room and board.

On August 28, 1999, petitioner signed an occupancy agreement prepared by Mr. Dixon and moved into the residence. The agreement contained the following terms and conditions: (1) Petitioner was to occupy a room at Mr. Dixon's residence for a continued period of time which could be terminated by either party with 1-week notice; (2) petitioner was to perform various duties at the residence for 15 hours per week in exchange for the room and board; (3) petitioner was to pay 20 percent of the monthly utilities used at the residence during the occupancy; (4) the utilities could be paid by providing additional work credited at a rate of $13 per hour; and (5) Mr. Dixon reserved the right to terminate the agreement immediately for any misconduct, nuisance, or failure to perform any duties.

Petitioner never filled out a Form W-4, Employee's Withholding Allowance Certificate, nor discussed with Mr. Dixon how she would be treated for tax purposes. She testified that Mr. Dixon told her the room and board would not be taxable.

Petitioner believed that the 15 hours per week consisted of 10 hours for the room and board and 5 hours for the utilities. Although not specifically mentioned in the occupancy agreement, petitioner testified that she was paid $13 an hour for each hour

she worked in excess of the required 15 hours per week. After 1 month of service, the hourly rate was increased to $15 per hour.

Petitioner's duties included preparing meals for Mr. Dixon at specific times during the day. Mr. Dixon demanded a strict breakfast and lunch diet to be prepared by petitioner. Further, Mr. Dixon required petitioner to work 2 hours each day on dinner. Petitioner was required to grocery shop, prepare each dinner, set the table, serve the meal, eat dinner with Mr. Dixon, provide dinner conversation, and clean the kitchen after dinner. Mr. Dixon provided all cooking utensils and cleaning supplies, and he paid for all the food.

Petitioner testified that she was not a friend of Mr. Dixon's and that she viewed the required dinner conversation strictly as a business relationship. Petitioner stated that the dinner conversation was just one of the jobs she did to keep her room.

Mr. Dixon required the housecleaning to be performed in a specific manner. He dictated how and with what supplies each aspect of cleaning the residence was to be performed. Mr. Dixon required certain rugs to be cleaned with a dry brush that he provided. Mr. Dixon would not allow these rugs to be vacuumed, although vacuuming was required in other rooms of the house. The furniture, floors, and bathrooms were to be cleaned with various products provided by Mr. Dixon.

Petitioner reported her work hours on a weekly time card, listing the duties performed and time spent completing each task. Petitioner submitted the time card to Mr. Dixon and was paid for hours in excess of the required 15 hours work week. Petitioner resided in the residence and provided services for Mr. Dixon for 15 weeks.

Petitioner was not completely satisfied with her living arrangements and decided to terminate the relationship at the end of the semester. After providing Mr. Dixon with the appropriate notice, petitioner moved out of the residence in December 1999.

For the 1999 tax year, Mr. Dixon, under the name "DIX-EN (A Partnership)", issued a Form 1099-MISC, Miscellaneous Income (Form 1099), to petitioner under the name Cheryl Gomez. The Form 1099 reported nonemployee compensation of $3,914.15 and contained a note that $3,375.00 of the compensation was associated with a nontaxable barter transaction.

Petitioner testified that she never received a Form 1099 from Mr. Dixon prior to petitioners' filing their 1999 tax return. After receiving the notice of deficiency, petitioner contacted Mr. Dixon and received a copy of the Form 1099 and an accompanying calculation worksheet.

The worksheet detailed the calculation used to determine the total amount reported on the Form 1099. The worksheet consisted of a separate calculation for the room, the board, and the funds

paid for work in excess of the required 15 hours per week. The calculation for the room was for 10 hours per week for 15 weeks at a value of $15 per hour, for a total of $2,250.00 of nonemployee compensation. The calculation for the board was for 5 hours per week for 15 weeks at a value of $15 per hour, for a total of $1,125.00 of nonemployee compensation. The additional $539.15 represents funds paid by Mr. Dixon to petitioner in 1999 for work performed in excess of the required 15 hours per week.

After reviewing the Form 1099 and the calculation worksheet, petitioner concedes that $539.15 of the reported nonemployee compensation is includable in income. However, petitioner argues that $3,375.00 of reported nonemployee compensation is excludable pursuant to section 119. Further, petitioner argues that she was an employee of Mr. Dixon's, and, therefore, any amount that may be taxable is not subject to self-employment tax.

Respondent argues that petitioner performed duties for Mr. Dixon as an independent contractor and that the fair market value of the services received is income subject to self-employment tax. Further, respondent argues that petitioner fails to qualify for income exclusion provided by section 119.

We decide the deficiency issues in this case on the basis of the record without regard to the burden of proof. Accordingly, we need not decide whether the general rule of section 7491(a)(1) is applicable in this case. See <u>Higbee v. Commissioner</u>, 116 T.C.

438 (2001).

We note at the outset that gross income refers to all income, from whatever source derived, including compensation for services.  Sec. 61(a)(1).  Gross income includes income realized in any form, whether in money, property, or services.  Sec. 1.61-1(a), Income Tax Regs.  When services are paid for in property or in exchange for other services, the fair market value of such property or other services must be included in income as compensation.  Sec. 1.61-2(d)(1), Income Tax Regs.  The stipulated price of services rendered will be presumed to be the fair market value of the compensation received in the absence of evidence to the contrary.  Id.

It is clear that petitioner received money, meals, and lodging in exchange for services she provided to Mr. Dixon. Consequently, the money received and the value of the meals and lodging received are includable in petitioners' gross income unless specifically excludable under a provision of the Internal Revenue Code.

Petitioner concedes that the money she received from Mr. Dixon is includable in gross income.  However, petitioner asserts that the value of the meals and lodging furnished by Mr. Dixon is excluded from gross income, pursuant to section 119(a).  Section 119(a) provides for the exclusion from an employee's gross income of the value of meals or lodging furnished by the employer if

certain criteria are met.  The exclusion from gross income under section 119 applies to employees only and is not allowed to independent contractors.  Accordingly, as a threshold matter, petitioner must establish that she was an employee of Mr. Dixon's to invoke section 119.

To determine if section 119 has any applicability in this case, we must first decide whether petitioner was a common law employee receiving compensation or an independent contractor receiving self-employment income.  Answering this question will also resolve the issue of whether petitioner is subject to self-employment tax.

Section 1401 imposes an additional tax on the self-employment income of every individual for old-age, survivors, disability insurance, and for hospital insurance.  The term "self-employment income" refers to the net earnings derived by the individual from self-employment in a trade or business.  Sec. 1402(a) and (b); Spiegelman v. Commissioner, 102 T.C. 394, 396 (1994).  "Trade or business", for purposes of self-employment income tax, has the same meaning as when used in section 162, except that it does not include the performance of service by an individual as an employee.  Sec. 1402(c)(2).  The definition of an employee applicable to this case is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".

Sec. 3121(d)(2); see sec. 1402(d).

The question of whether an individual performs services for another as an employee or independent contractor is generally considered a question of fact. Packard v. Commissioner, 63 T.C. 621, 629 (1975). This Court has enumerated seven factors that should be considered in determining whether an individual is a common law employee: (1) The degree of control exercised over the details of the work; (2) the individual's investment in the work facilities; (3) the individual's opportunity for profit or loss; (4) whether the work is part of the principal's regular business; (5) the principal's right to discharge the individual; (6) the permanency of the relationship; and (7) the relationship the parties think they are creating. Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). These factors are not weighted equally but must be evaluated according to their significance in each particular case. Teschner v. Commissioner, T.C. Memo. 1997-498.

Although no one factor is controlling, the most fundamental is the degree of the principal's control over the details of the work. Packard v. Commissioner, supra. Generally the common law employer-employee relationship exists when "the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and

means by which that result is accomplished." Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.; see also Gamal-Eldin v. Commissioner, T.C. Memo. 1988-150, affd. without published opinion 876 F.2d 896 (9th Cir. 1989).

With that guidance, we consider whether petitioner was a common law employee or independent contractor. Mr. Dixon controlled the details of when and how the work was to be performed at his residence. He dictated the means by which the duties were to be accomplished. Mr. Dixon supplied all the food, cooking utensils, and cleaning supplies. He specifically described how certain things were to be cleaned and what supplies were to be used. Mr. Dixon controlled the times meals were to be served and what was to be prepared. Petitioner had no investment expense, nor was she responsible for work expenses. Petitioner had no opportunity for income or loss, and Mr. Dixon could terminate petitioner at any time for cause. As we view the facts in this case, in light of the factors enumerated above, we find that petitioner was an employee of Mr. Dixon's for 15 weeks during the year at issue.

Because petitioner has established she was Mr. Dixon's employee for 15 weeks in 1999, she has met the threshold requirement to invoke section 119. Accordingly, we must determine whether petitioner has met the remaining elements of section 119 to exclude from gross income the value of the meals

and lodging she received.

The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if (1) the meals are furnished on the business premises of the employer, and (2) the meals are furnished for the convenience of the employer. Sec. 119(a). If an employer provides meals to an employee without charge as a means of providing additional compensation to the employee (and not for a substantial noncompensatory business reason of the employer), the meals are not regarded as furnished for the convenience of the employer, and the value of the meals is included in the employee's gross income. Sec. 1.119-1(a)(2)(i), Income Tax Regs.

Here, petitioner was furnished meals as compensation for services that she provided. The meals petitioner received were not additional compensation; the meals were part of her total compensation. The meals provided to petitioner were not for a substantial noncompensatory business reason of her employer. Accordingly, the meals furnished to petitioner were not for the convenience of Mr. Dixon, and the value of the meals may not be excluded from gross income pursuant to section 119(a).

The value of lodging furnished to an employee by his employer shall be excluded from the employee's gross income if (1) the lodging is furnished on the business premises of the employer, (2) the lodging is furnished for the convenience of the

employer, and (3) the employee is required to accept such lodging as a condition of employment. Sec. 119(a). Failure to establish any one of these criteria precludes application of section 119.

The "convenience of employer" and "condition of employment" tests are essentially the same. Tyler v. Commissioner, T.C. Memo. 1982-557. Both tests require a "direct nexus between the lodging furnished and the asserted business interests of the employer served thereby." McDonald v. Commissioner, 66 T.C. 223, 230 (1976). An employee has not met the tests by simply establishing that his or her employer required the employee to accept lodging as a requisite of employment. The "condition of employment test requires that the lodging be more integrally related to the various facets of an employee's position". Id. at 232.

The lodging will meet the tests if the employee is required to accept the lodging in order to enable him properly to perform the duties of employment. Sec. 1.119-1(b), Income Tax Regs. Lodging will be regarded as furnished to enable the employee properly to perform the duties of his employment when, for example, the lodging is furnished because the employee is required to be available for duty at all times or because the employee could not perform the services required of him unless he is furnished such lodging. Id.

The evidence presented at trial establishes that petitioner

was involved in a wide range of duties at Mr. Dixon's residence. However, petitioner did not show that she could not have performed the required duties had she lived at another location. Petitioner introduced no evidence to establish that residing at Mr. Dixon's residence was necessary in order for her to perform properly the duties of cooking and cleaning. Petitioner was required to work only 15 hours per week at the residence. While the occupancy agreement required petitioner to live at the residence, petitioner was not on duty at all times and could have properly completed her 15 hours of weekly work while residing elsewhere. Accordingly, petitioner may not exclude the value of lodging from gross income pursuant to section 119(a).

Because we have determined that the value of the entire 15 hours of work per week is includable in petitioners' gross income, we need not allocate the hours worked between meals and lodging to determine the includable income amount. The original agreement between petitioner and Mr. Dixon stipulated the value of services rendered at $13 per hour. After 1 month (4 weeks) of service, the hourly rate was increased to $15 per hour. Accordingly, the fair market value of services received by petitioner for the first 4 weeks that she worked is $13 per hour and the remaining 11 weeks of work is valued at $15 per hour.

Petitioner worked 15 hours per week for 4 weeks at a value of $13 per hour, for a total value received of $780.00.

Petitioner worked 15 hours per week for 11 weeks at a value of $15 per hour, for a total value received of $2,475.00. Thus, we conclude that the value of meals and lodging received by petitioner was $3,255.00. In addition, petitioner received cash compensation of $539.15. Therefore, petitioners must include $3,794.15 of compensation in their gross income for the year at issue.

Because we have determined that petitioner was Mr. Dixon's employee during the 15-week period in 1999, she is not subject to self-employment tax on any portion of the $3,794.15 of compensation.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.