T.C. Memo. 2004-252

UNITED STATES TAX COURT

BRAD AND TERI MONTAGNE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11648-02.                Filed November 8, 2004.

Brad Montagne, pro se.

<u>James Brian Urie</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following
deficiencies in, addition to, and accuracy-related penalties on
petitioners' Federal income taxes:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|------------------|------------------|
| 1997 | $17,091 | $3,956 | $3,418 |
| 1998 | 17,867 | -- | 3,573 |

After concessions,[1] the issues for decision are: (1) Whether petitioners' horse training and breeding activity was an activity not engaged in for profit; (2) whether petitioners are liable for self-employment tax; (3) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a);[2] and (4) whether petitioners are liable for an addition to tax for failure to file a timely return.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Sturgeon Lake, Minnesota, at the time they filed their petition.

Chiropractic Practice

Brad Montagne (petitioner) has been a chiropractor for 14 years. He operated his chiropractic practice as a sole proprietorship in 1997 and 1998. Petitioner typically works as a chiropractor 5 days a week for 40 hours.

---

[1] Petitioners conceded every issue raised in the statutory notice of deficiency, except the addition to tax and penalty and whether petitioners are subject to self-employment tax. Accordingly, petitioners conceded that they had additional interest income of $2,056 and $1,861 in 1997 and 1998, respectively. Petitioners also conceded that they had additional "net schedule C income" of $61,960 and $65,719 in 1997 and 1998, respectively.

[2] Unless otherwise stated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Horse Training and Breeding Activity

Petitioners purchased a 115-acre farm in 1994.  Starting in 1994, petitioner decided to breed, train, and sell horses.  Before this, petitioner was not involved in horse training or breeding.  Petitioner's previous experience with horses consisted of riding them as a child.  Petitioner derived personal pleasure and enjoyment from riding horses.

In 1997 and 1998, petitioners owned 14 horses.  Petitioner and his children rode the horses.  Petitioners' children fed, groomed, and cared for the horses and performed "groundwork" on the farm.  The children also rode the horses in 4-H Club competitions in 1998.

Petitioner sold three horses in 1997 and two horses in 1998.  Petitioner purchased two of the horses sold in 1997 for $2,500, and the third was foaled on the farm.  Petitioner received $4,000 for the three horses sold in 1997.  Petitioner purchased the two horses sold in 1998 for $1,650.  Petitioner received $1,850 for the two horses sold in 1998.

Petitioner maintained inadequate records of the horse activity.  Petitioner did not prepare, nor did he have a qualified professional prepare, financial projections or a business plan for the horse training and breeding activity.  Petitioner did not keep business invoices for the sales of

horses.  Petitioner did not maintain a separate bank account for the horse activity.

Petitioners' Returns and Respondent's Determinations

Respondent determined from petitioners' original tax returns deficiencies of $17,091 and $17,867 for 1997 and 1998, respectively.  Petitioners claimed losses from the horse activity of $21,823 and $16,891 on amended returns for 1997 and 1998, respectively.  Respondent did not process the amended returns for 1997 and 1998.

OPINION

I.  Petitioners' Horse Activity

Section 183(a) provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in section 183(b). Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

For a deduction to be allowed under section 162 or 212(1) or (2), a taxpayer must establish that he or she engaged in the activity with an actual and honest objective of making an economic profit independent of tax savings.  Evans v. Commissioner, 908 F.2d 369 (8th Cir. 1990), revg. T.C. Memo. 1988-468; Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988),

affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The expectation of profit need not have been reasonable; however, the taxpayer must have entered into the activity, or continued it, with the objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

Whether the requisite profit objective exists is determined by examining all of the surrounding facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.

Although section 7491(a) places the burden of proof on the Commissioner with regard to certain factual issues involving examinations commenced after July 22, 1998, petitioners do not assert that section 7491(a) shifts the burden to respondent, nor have petitioners complied with the substantiation and record-keeping requirements of section 7491(a)(2). Therefore, the burden of proof remains on petitioners.

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in determining whether a taxpayer had a profit objective: (1) The manner in which the taxpayer carried

on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  This list is nonexclusive, and the number of factors for or against the taxpayer is not necessarily determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others.  See id.; cf. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).

Petitioners contend that the losses from the horse training and breeding activity are properly deductible because the activity was motivated by an actual and honest objective of making a profit.  Conversely, respondent asserts that the activity was not engaged in for profit.  For the reasons discussed below, we agree with respondent.

A.  Manner in Which the Activity Is Conducted

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and

records may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner commingled the financial affairs of the horse training and breeding activity with his personal finances. He paid all the expenses of the horse activity from his personal account, and the horse activity maintained no financial accounts of its own. This commingling of funds is an indication that the activity is a hobby rather than a business for profit. See Ballich v. Commissioner, T.C. Memo. 1978-497. Petitioner also did not generate or maintain business documents or records. We conclude that petitioners did not conduct the horse training and breeding activity in a businesslike manner, and this fact indicates that the activity was not engaged in for profit.

B. Expertise of Petitioner

A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner testified that he consulted with experts, read books, and attended seminars and conferences about the subjects of horse training and breeding. Although petitioner testified that he became knowledgeable about techniques of training and breeding horses, he was not knowledgeable about the economics of the activity. Significantly, petitioner did not seek professional advice on the economic aspects of horse training and breeding.

These facts do not persuade us that petitioners had a profit motive.

C. Elements of Personal Pleasure

The absence of personal pleasure or recreation relating to the activity in question may indicate the presence of a profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner conceded that he enjoyed riding horses and watching his children compete by riding his horses in 4-H Club competitions. We find that this factor weighs against petitioners.

D. Time and Effort Petitioner Expended

Where an activity has substantial personal or recreational aspects, the time and effort spent may be due to a taxpayer's enjoyment of the activity rather than an intent to derive a profit. White v. Commissioner, 23 T.C. 90, 94 (1954), affd. per curiam 227 F.2d 779 (6th Cir. 1955). Although enjoying an activity does not preclude a profit objective, the facts of this case suggest that petitioner spent time on the activity because of his children's and his own fondness for horses rather than an expectation of profit. Cf. Harrison v. Commissioner, T.C. Memo. 1996-509.

E. The Activity's History of Income or Losses

A record of substantial losses over several years may be indicative of the absence of a profit motive. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published

opinion 647 F.2d 170 (9th Cir. 1981). This Court has recognized that the startup phase of a horse breeding activity is 5 to 10 years. Engdahl v. Commissioner, 72 T.C. 659, 669 (1979). The 1997 and 1998 losses were incurred within the recognized period of the startup of a horse breeding activity. This factor therefore does not weigh against petitioners' having a profit motive.

F. The Amount of Occasional Profits

The amount of occasional profits, if substantial in relation to losses incurred or the taxpayer's investment, may indicate a profit objective. See sec. 1.183-2(b)(7), Income Tax Regs. Petitioner testified that he earned a small profit from the horse activity in 2000; however, he produced no evidence to support this assertion. Petitioners incurred losses in 1997 and 1998 far in excess of the small profit that petitioner claimed to have realized in 2000. Therefore, the relatively small amount of profit petitioners purportedly realized does not indicate a profit motive.

G. Petitioners' Financial Status

Substantial income from sources other than the activity in question, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner operated his chiropractic practice as a sole

proprietorship and had net profits of $86,960 and $90,719 in 1997 and 1998, respectively.  Therefore, petitioners could afford to operate the horse training and breeding activity as a hobby, and we conclude that they sought to reduce or eliminate their tax liability by using the losses from the horse activity to offset income from other sources.

H.  Conclusion

After reviewing the entire record, we conclude that petitioners did not engage in the horse breeding activity with an actual and honest objective of making a profit within the meaning of section 183.

II.  Self-Employment Tax

Section 1401(a) imposes a tax upon the self-employment income of every individual.  Self-employment income consists of gross income an individual derives from carrying on any trade or business.  Sec. 1402(a) and (b); Spiegelman v. Commissioner, 102 T.C. 394, 396 (1994).  Petitioner operated his chiropractic practice as a sole proprietorship and had net profits of $86,960 and $90,719 in 1997 and 1998, respectively.  Petitioners deny that they are liable for self-employment tax.  On brief regarding this issue, petitioners advanced arguments characteristic of tax protester rhetoric that has been universally rejected by this and other courts.  See Wilcox v. Commissioner, 848 F.2d 1007 (9th Cir. 1988), affg. T.C. Memo. 1987-225; Carter v. Commissioner,

784 F.2d 1006, 1009 (9th Cir. 1986). We shall not painstakingly address petitioners' assertions "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984).

III. Penalty and Addition to Tax

Respondent has the burden of production under section 7491(c) for the addition to tax and the penalty and must come forward with sufficient evidence showing that they are appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once respondent has done so, the burden of proof is upon petitioners to establish reasonable cause and good faith. Id. at 449.

A. Section 6662(a) Accuracy-Related Penalty

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations. Sec. 6662(b). The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)). Sec. 6662(d)(2)(A). An understatement is a "substantial understatement" when the

understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on a return.  Sec. 6662(d)(1)(A).

Whether applied because of a substantial understatement of tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent determined tax deficiencies of $17,091 and $17,867 for 1997 and 1998, respectively.  Petitioners conceded at trial that respondent's adjustments to petitioners' tax liability in the notice of deficiency were correct, with the exception of self-employment tax.  We have found for respondent on the issues of petitioners' self-employment tax liability and the deductibility of losses from their horse activity.  Respondent has met his burden of production.  Petitioners did not present any evidence indicating reasonable cause or substantial authority.  See secs. 6662, 6664.  Accordingly, we sustain respondent's penalty determination.

B.  Addition to Tax

Respondent determined that petitioners are liable for an

addition to tax pursuant to section 6651(a)(1).  Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless such failure is due to reasonable cause and not due to willful neglect.

Petitioners signed the 1997 return on April 14, 1999.  We conclude that respondent satisfied his burden of production regarding this issue.  Thus, petitioners must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect or that an exception applies.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see Higbee v. Commissioner, supra at 447.

Petitioners presented no evidence that they timely filed a return for 1997 or that their failure to file was due to reasonable cause and not due to willful neglect.  We hold that petitioners are liable for the addition to tax pursuant to section 6651(a)(1).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be

entered for respondent.